# WEST VIRGINIA CENTRAL AND PITTSBURG R. CO. *vs.* STATE, Use of IDA F. FULLER.

*Negligence—Car Derailed and Thrown Outside of Company's Right of Way—Sufficiency of Evidence—Instructions to the Jury.*

A railway company is under the obligation not to injure persons or property near its right of way.

When as the result of a collision a car is hurled outside of the railway company's right of way and inflicts an injury upon a person on the adjoining land, the railway company is liable for such injury unless it be shown that the collision was caused by an unavoidable accident.

A long train of loaded freight cars on defendant's road passed a side-track on which stood a train bound in the opposite direction. When the first train, which was going up a heavy grade, had passed the switch, the other train on the siding started to pull out, and had not entirely cleared the siding when six or eight of the rear freight cars of the long train broke loose, and came back down the grade at a high rate of speed. The last car struck with a glancing blow the caboose of the train which was leaving the siding, derailing it and throwing it over into the yard of a house adjoining the track. A boy was standing there waiting for the trains to pass in order to cross the tracks, and the car so thrown into the yard fell upon and killed him. In an action to recover damages for the death so caused the plaintiff's evidence was to the effect that the boy was not on defendant's right of way, but in the private yard above mentioned, while defendant's evidence was that he was on the company's own right of way. It was not shown in the case what caused the cars to break away, but it was proved that al

though most of the cars in that train were equipped with air-brakes, yet they were not all coupled up with the air and that if they had been, the moment the train parted, both sections of it would have been stopped and the collision avoided. *Held*,

1st. That since the defendant had failed in its duty to keep its cars on its own right of way and had not shown that the breach of this obligation was caused by an unavoidable accident, there was sufficient evidence of defendant's negligence to entitle the plaintiff to recover, if the boy who was killed was not then on the defendant's right of way.

2nd. That if the deceased was on the defendant's right of way when the car fell upon him, then the failure of the defendant to use appropriate appliances to prevent such collisions could not be relied on to show negligence towards him as such trespasser.

In the above case the injury would not have happened if the rear cars of the long freight train had not become detached, or if these detached cars had been equipped with air-brakes in working order, or if at the moment of the collision the caboose of the other train had been clear of the siding and on the main track. The concurrence of these three things, all of them acts of the defendant, constituted the efficient cause of the injury. Consequently an instruction to the jury is defective which segregated these elements of the cause of the injury and said that inasmuch as the parting of the train and not the failure to have air-brakes was the proximate cause of the accident, no recovery could be had because there was no evidence to show that the severing of the train was due to any negligence on the part of the defendant.

When the prayers offered in a case make no reference to the pleadings, the plaintiff's right to recover does not depend upon the form of the action or the state of the pleadings, but upon the case made by the evidence.

A prayer in an action of negligence instructing the jury that if they found that the injury complained of resulted from the want of ordinary care on the part of the agents of the defendant and not from the want of ordinary care by the plaintiff, directly contributing to the accident, that then the plaintiff is entitled to recover, is not so general as to require a reversal of the judgment.

Appeal from the Circuit Court for Allegany County (STAKE, J.), where there was a judgment for plaintiff for $2,250.

*Plaintiff's Prayer.*—If the jury find from the evidence that on or about the 8th day of July, 1901, Melville Fuller, under the age of 21 years, was killed by the cars of the defendant while operated by its agents on its road, and that the equitable

plaintiff herein is related to him in the manner as set forth in the pleadings, and that the said killing resulted from the want of ordinary care and prudence on the part of the agents of the defendant, and not from the want of ordinary care and prudence of the deceased, directly contributing to the accident, that then the plaintiff is entitled to recover in this cause. (*Granted.*)

*Defendant's 1st Prayer.*—That the plaintiff has offered no evidence in this case legally sufficient to entitle it to recover and their verdict must be for the defendant.    (*Refused.*)

*Defendant's 2nd Prayer.*—That there is no evidence in this case of any such negligence on the part of the defendant in the discharge of its legal obligations to the deceased, or to the equitable plaintiff in this case, as entitles the plaintiff to recover in this action.    (*Refused.*)

*Defendant's 3rd Prayer.*—That if the jury find from the evidence that at the time of the accident sued for, the defendant was operating a railroad through the suburbs of the village of Luke, Allegany County, and that immediately west of its main track it had a siding opposite the house of a certain Mr. Rogers, and that the boy, Melvin W. Fuller, for whose death this suit is brought, was standing on the company's right of way between the fence of said Rogers' lot and said siding, waiting for a train of cars which was then on said siding to move off the same so that he could cross the same with a bucket of water to the automobile works on the east side of said railroad, and that while said boy was standing there part of the cars of freight train of the· defendant which had gone up the track about a quarter of a mile, broke loose from the train to which they were attached and ran back down the main line of said track and that just before said cars broke loose and ran back said train which had been standing on said siding was pulled onto the main track going east by the servants of the defendant and had all gotten off of said siding onto said main track except one car and the caboose on the rear end of said east-bound train, and that said cars so running back on said main track sidewiped and struck said

caboose and knocked it over against and upon said boy, where and while he was so standing on the west side of said siding waiting to cross the track, whereby said boy was killed, still plaintiff is not entitled to recover, even though the jury shall further find that at the time he was waiting to cross said track and for a long time before there was a path or walk across the right of way of the tracks of the defendant from the property of said Rogers over to said automobile works, over which persons together with the said boy were accustomed to pass and repass and over which said boy on said occasion was waiting to pass, and even if the jury shall further find that none of the cars which broke away from said train and ran back on the main track were equipped with air-brakes, or connected up with air-brake connections, with the balance of said train from which they had just broken.   (*Rejected.*)

*Defendant's 4th Prayer.*—That if the jury believe from the evidence that the deceased, Melvin W. Fuller, was, at the time of the injury, which caused his death, on the right of way of the defendant, with a view of crossing the said railway by a path over the same used by said Fuller and others with the acquiescence of the defendant, but not a public way or crossing, then the defendant was under no obligation to the said Fuller, or to the equitable plaintiff, in this case to equip its cars with air-brakes, and even if they believe from the evidence that the defendant did not have its cars equipped with such brakes and that the injury and consequent death of the said Fuller was the result of the failure of said defendant to have its cars so equipped, yet the plaintiff is not entitled for that reason, in this action.   (*Granted.*)

*Defendant's 5th Prayer.*—That if the jury find from the evidence that the deceased, Melvin Fuller, at the time the caboose was thrown over on him as shown in the evidence, was standing outside the Rogers' fence and on the right of way of the defendant, then the plaintiff is not entitled to recover in this action although the jury may further find that the injury and consequent death of Fuller was the result of the defendant not having air-brakes on the cars that became

.detached from the train, or the result of defective appliances or machinery. (*Granted.*)

*Defendant's 6th Prayer.*—That under all the circumstances of this case, the defendant owed no duty to the deceased, or to the equitable plaintiff, to equip its cars, or any of them, with air-brakes, in the running of its trains, and even if the jury believe from the evidence that the defendant failed so to equip its cars and that the death of the said Fuller boy resulted from that failure, yet the plaintiff is not entitled to recover. (*Refused.*)

*Defendant's 7th Prayer.*—That even if the jury shall find that the cars which broke loose and ran back were not equipped with air-brakes and if they had been so equipped they would have stopped and run back resulting in the collision testified to by the witnesses, yet that the direct and proximate cause of the accident was the parting of the cars from the train and not the failure to have said cars equipped with air-brakes, and there being no sufficient evidence in this case to show that the parting of the train was due to any negligence of the defendant, the plaintiff is not entitled to recover. (*Refused.*)

*Defendant's 8th Prayer.*—That if the jury find that but for the intervention of the train going east, the cars which broke off and ran back would have gone on down the main track of the defendant's railroad and done no injury to the deceased, then the plaintiffs are not entitled to recover, even though the jury may find that the cars which ran back and struck the .intervening train were not equipped with air-brakes, unless, the jury further find that in drawing said east-bound train out of the siding on to the main track, the servants of the defendant were guilty of negligence in so doing. (*Refused.*)

*Defendant's 9th Prayer.*—That there is no evidence in this case legally sufficient to show that the servants of the defendant were guilty of any negligence, under the circumstances, in drawing said east-bound train from the siding on to the main track or that the parting of said train was in any way caused by the negligence of the defendant. (*Refused.*)

*Defendant's 10th Prayer.*—That if their verdict be for the plaintiff that in awarding damages they are not to take in consideration the mental pain and suffering of the mother of the deceased in consequence of the death of the child, and are not to give punitive, vindictive or exemplary damages against the defendant, but in estimating the damages they are confined to the pecuniary damage sustained by the equitable plaintiff and are to give to her such a sum as the jury may believe from all the evidence in the case, will be an adequate compensation for the loss of her son's services from the time of his death to the period when, if he had lived, he would have attained the age of twenty-one years. (*Granted.*)

Ths cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*C. W. Dailey* and *Benj. A. Richmond,* for the appellant.

The only controverted fact of importance was, whether the boy, when hurt, was on the right of way of the appellant or inside Rogers' yard fence. There was testimony tending to support either contention but we respectfully submit that the decided preponderance of the evidence went to show that the boy was on our right of way when struck. There was error in rejecting our 3rd prayer. The Court was right in ruling that if the boy was on our right of way we owed him no duty to have air-brakes. But on what theory can it be held that we owed a person, situated as he was, the duty to guarantee that our coupling would not break. On the theory that he was on our right of way, to which we were entitled under the evidence, the boy was a mere licensee. He was not there by right but by our license. What duty did we owe him then? Here was a boy on our right of way about to cross at a place not a crossing; a mere trespasser but for our license. He was 18 feet from our main track. His presence where he was, was wholly unknown to the men operating the train. They are a half-mile off with no knowledge that anybody is on the track below. An unexpected accident happens, the

cause of which is not shown.    The train parts and negligence is to be presumed against us from the parting alone.    And this negligence thus inferred, is to be coupled with a duty to a boy standing on our right of way 18 feet from our track, a half-mile below, so as to work out our responsibility !    The law contains no such doctrine.    Of course, if our employees saw the boy on our track or in a dangerous position anywhere, and had failed to do all they could to prevent injuring him we would be liable.    We owe this duty even to a trespasser.    But are we required to guarantee to a boy situated as this one was, that our train, a half-mile up the road, would not break and run down and strike another car on another track, and hurt the boy.    That is the question and the plain question submitted by our 3rd prayer and its rejection was clearly error.

It is contended by the appellee, that to a person so situated, we owed the duty of operating our freight trains, not only with all the cars *equipped* with air-brakes, but with all the air-brakes on all the cars *coupled up* and *charged* with air. If we owed that duty to that boy, then we owed the same duty to every loiterer who might stand along near the edge of our right of way from Cumberland to Elkins.    They could stand along there and take all the chances of accident, incident to operating long trains, by collision or otherwise, and however remote the probability of such accident might be, we were bound to anticipate it, by the most expensive appliances and the most inconvenient and burdensome methods of operating our trains, and if we failed and one of these loiterers got hurt in the most unexpected and unforeseen way, still we are liable to him.    He is not bound to take any care of himself.    His opportunities to anticipate danger are just as good as ours, yet no contributory negligence is to be charged against him.    He can stand there and take whatever chance of injury there is and hold us liable, although we never knew of his existence much less of his danger.    The rejection of our sixth prayer goes that length.

The thing finally done is too remote in causal connection

from the thing complained of to raise up any duty in any one to anticipate it. The cars might have broken, their brakes might have been absent, and still no harm whatever would have come to the boy but for the intervening car and the other extraordinary and wholly unexpected occurrence, of a car being knocked from an intervening track clear over in Rogers' yard. And in this aspect of the case and under these circumstances we owed no duty to the boy standing eighteen feet from our track in Rogers' yard, to charge all our cars with air-brakes, simply because the sequel now shows that it was *possible* for our cars to break and run back, and it was *possible* that a train should just then be pulling out from a siding on our main track, and it was *possible* that it should just at that moment be struck by the returning cars, and it was *possible* that a car should be knocked clear over in Rogers' yard, and it was *possible* that a boy should just at that moment be there and get killed. The jury should have been instructed that under all the circumstances of the case we owed no duty to the boy to have cars equipped with air-brakes and the rejection of our sixth prayer was therefore clear error.

Did the parting of our train point by necessary inference to any particular or specified negligence or want of care on our part? If so, what negligence? In what particular? Did the bare breaking of the train necessarily mean that our trainmen had operated the train in a negligent manner? Was that the particular of negligence indicated with "reasonable probability" by the accident? Or did it indicate that there was negligence in putting the train together, or in a failure to inspect the cars, or that the coupling was defective to our knowledge, or that the road-bed was out of order, or any one of a dozen other causes that might be imagined. Which one of all these possible causes does the accident itself point out with "reasonable probability" as the particular cause which produced the accident. In *Howser's case*, 80 Md. 146, the falling of the ties enabled the Court to assign the cause with "reasonable probability" to careless loading. Can this Court assign the cause of the breaking in this case with the same reasonable probability, to

one or more of the above possibilities, or to any other that might be suggested by the appellee ? We earnestly insist that it cannot; that here the bare breaking points to a large number of equally possible causes and no one "reasonably probable" cause, some of which would be due to our negligence, and others not at all so ; and that in short to attempt to assign the cause in this case from the mere fact of breaking, would be to relegate the whole matter to pure guess work without any "reasonable probability" whatever to guide us, and in this particular therefore being widely different from *Howser's case.*

The plaintiff must prove circumstances from which it may be fairly inferred that there is a reasonable probability that the accident resulted from our negligence and must also show with reasonable certainty *what particular precaution* should have been taken to avoid the accident. *P. W. & B. Ry. Co. v. Stebbing,* 62 Md. 504.

We contend, therefore, that if the mere breaking did not furnish the lower Court with any reasonable probabllity as a guide in determining the particular in which we were negligent, then it was error to throw the whole matter into the field of mere conjecture and leave it to the guess-work of the jury ; a guess-work in which they were permitted to range over the whole field of surmise hunting for some possibility of negligence ; each juror possibly assigning a different negligence but all concurring in the belief that there was negligence of some sort, and thus working out our liability by pure speculation. And this too, while at the same time the mere fact of the breaking furnished just as reasonable a probability that it occurred from causes not due to our negligence at all ; such as a defective coupling not known to us after proper inspection; a draw bar with a latent imperfection in it ; a sudden, unavoidable twist of the train, and many other causes equally probable, equally surmisable and equally innocent of negligence.

If we are right in the above then the maxim *"res ipsa loquitur"* does not apply to this case ; the jury should have

been furnished with some *proof* as to the cause of the break-
ing showing, or at least tending to show that the particular
cause was due to some negligence on our part, and there
being no evidence of that kind, the cause of the breaking
should not have been left to the speculation of the jury. This,
however, was done by the rejection of our seventh prayer,
and by the rejection of our third prayer, even on the suppo-
sition that the boy was on our right of way as a licensee.   If
the breaking of the train was the proximate cause of the in-
jury, and the absence of air-brakes merely one of the incidental
or subordinate causes, and if there was no proof of negligence
in the breaking, as the prayer asked the Court to say, and none
can be presumed as we have contended, then our seventh
prayer should have been granted and its rejection was sub-
stantial error, and there was also error in rejecting our third
prayer.

There was no ground upon which our ninth prayer could
be rejected.   In a case where everything was being left to the
jury and they were permitted to presume and guess at negli-
gence wherever it could be imagined or suggested, they may
well have presumed negligence against defendant in drawing
its north-bound train on to the main track.   We were there-
fore entitled, at least, to have this point settled by the Court
and not left open to the speculation or surmise of the jury.
There certainly was not a scintilla of evidence of any negli-
gence on our part in this respect.   An examination of the
whole record will show this.   Then why should the jury not
have been so instructed and this point settled.

*D. J. Blackiston* and *David J. Lewis* (with whom was *George
A. Pearre* on the brief ), for the appellee.

From the facts the law raises a presumption of negligence.
The mere breaking of the train, at a point where the pressure
was slightest, and its subsequent collision with the caboose,
could not have happened if due caution had been exercised
in connecting the train.  If the coupler had been adequate it
would not have broken.   If proper provision had been made

for such an accident by air-brakes the collision could not have taken place. Under these circumstances the burden is upon the defendant to show that it exercised due caution and employed the appliances requisite to protect life and property. Having shown that the train broke through the use of a rotten coupling, and that in the resulting smashup the boy was killed through factors wholly in charge of the defendant, a presumption of law arises that the defendant has neglected some duty, wherefore it imposes upon it the burden of showing that it was free from fault. Now the boy was not at fault; all the instruments of causation were under the dominion of defendant; the boy was killed by the property and acts of its servants; now, why under these circumstances should not the burden of proof be shifted upon the defendant to explain if there was any nonculpable cause of the death? It wholly failed to explain. *Howser's case*, 80 Md. 146.

The second mode of proving defendant's negligence is by the direct evidence of attending circumstances. Here was a train, according to defendant's witness, Biggs, of forty-nine cars, thirty-three of which were loaded with steel rails. The sixteen empties were in the rear, and the whole train was being pulled up the Alleghany mountains by two heavy freight locomotives pulling from the front. According to witness Pagenhardt it was the proper thing to have one engine behind. Allowing each car a weight of twenty tons, and the loaded ones a weight of forty tons, we have a total weight of 1950 tons in the train. The tensile resistance upon the couplings at the front of the train must therefore have been 1950 tons. Only eight empties at the rear broke away; hence the the tensile weight upon the coupling or drawhead that gave way could only have been about 160 tons. Could a coupling that refused to bear less than one-tenth the weight endured by such appliances on the front of the train have been anything else than rotten? Couplings must be made to haul loaded trains. This one refused to haul eight empties. Was it not the duty of the defendant to have inspected this car and train? There is no pretense that the car was ever inspected. But it was in-

cumbent on the defendant to do so, and failure to provide against defects by inspection is positive negligence, even to an employee. The defendant owed this duty to the boy, it owed it to the public and it owed it even to its own servants. *Baily v. R. W. & O. R. R.*, 139 N. Y. 302; *Durkin v. Sharp*, 88 N. Y. 225; *King v. Ohio, etc., R. R.*, 14 Fed. Rep. 277; *Richmond & D. Ry. Co. v. Elliot*, 149 U. S. 266; *Keith v. New Haven, etc.*, 140 Mass. 175.

The second element of positive negligence on the part of the defendant consists of the failure to have in working order air-brakes sufficient to control the train under circumstances of unforeseen necessity. The witnesses all say that if the train had been so fitted with air-brakes, in working order, the broken section would have come to an instant stop by the automatic action of the brake instead of running away and killing the boy. It is a general principle that common carriers must use reasonably safe appliances in the conduct of their business to render life and property free from danger. It has been determined over and over again that when appliances come into general use and their practicability is finally ascertained it becomes a duty to employ them. On railroads for example, steam gages, water gages, safety valves, bells, whistles and other appliances must be employed if the operator would protect itself from the law of compensation for injuries. This is now quite as true of air-brakes. And independently of the Act of Congress it has been so determined. *Greenloe v. So. Ry. Co.*, 41 L. R. A. 399; *Troxler v. So. Ry. Co.*, 44 L. R. A. 313; *Halden v. N. C. R. R. Co.*, 55 L. R. A. 784.

But the defendant is admitted to be an interstate railway, in fact this very train had started at Ridgely, W. Va., and proceeded to Luke, Md., when the accident occurred. It is, therefore, subject to the Act of Congress of March 2nd, 1892, known as the Safety Appliance Act. But to what purpose is it that Congress compels the introduction of these safety appliances if defendant and its servants deliberately refuse to employ them? It is not contended that the runaway cars were not fully equipped. They were equipped as ninety-nine per

cent of cars of this country were equipped at that time as shown by Millholland. But the defendant's servants neglected to couple them up, so that they were useless for the purpose designed by the Act of Congress for the protection of property, life and limb.

McSHERRY, C. J., delivered the opinion of the Court.

This is a personal injury case. All the questions involved arise on the instructions granted and on the prayers rejected by the trial Court, and they are brought up by the one bill of exceptions which the record contains. The legal principles that must control the final decision are perfectly familiar and the only difficulty presented springs, as is generally the case, from the application of those principles to the peculiar facts of the occurrence. A brief statement of the facts—both those which are uncontroverted and those which are disputed—will now be made as they furnish the basis of the discussion which will follow.

The appellant is a railroad company whose road extends from Cumberland, in the State of Maryland southwardly to West Virginia Junction and thence on to Elkins, in the State of West Virginia. The accident, out of which this case grew, happened near the town of Luke, in Allegany County. At the place of the accident there is a siding used to let trains going in opposite directions pass. On the day the injury was inflicted a train of forty-nine freight cars, thirty-three of which were loaded with steel rails and sixteen of which were empty, was proceeding southwardly towards West Virginia Junction up a considerable grade, whilst a train of empty freight cars, destined northwardly, stood on the siding waiting for the south-bound train to pass. Upon one side of the railroad track an automobile works was located. Upon the opposite side of the track a man by the name of Rogers lived. The men employed at the automobile works got their drinking water from a well in the yard of Rogers. Melville W. Fuller, a boy of little more than fourteen years of age, was employed at the automobile works to carry water from the Rogers' well to the

works for the use of the workmen there. To go from the works to the well he was compelled to cross the main track and the siding by a path used by him and others, though the path was not a regular public or private crossing. On July the 8th, 1901, the boy crossed the two tracks with a bucket in his hand to get water. Before he could return the north-bound train of empty freight cars backed into the siding and the south-bound train of loaded and empty freight cars passed, going up a heavy grade. This latter train was hauled by two engines, one of which was in front and the other was some six or seven cars back from the front. After it had passed the switch the train of empties standing on the siding started to pull out. The boy all this while was standing according to the contention of the railroad company, on its right of way, but according to the contention of the appellee, in the yard of Rogers, waiting for the two trains to clear the crossing at the path so that he might return with his bucket of water to the automobile works. After the south-bound train had passed some distance up the grade six or eight of the rear cars broke loose and came back at a high rate of speed and as the train of empties had not entirely cleared the siding the caboose of the former struck with a glancing blow the caboose of the latter, derailing both and driving the last-named caboose over into the yard of Rogers. It fell upon the boy and in-stantly crushed him to death. This suit was then brought in the name of the State for the use of the boy's widowed mother against the railroad company to recover damages for the injury she sustained by the death of her son. It was shown that whilst most, if not all of the cars in the south-bound freight train were equipped with air-brakes, all of those so equipped were not coupled up with the air; and it was proved that if the air-brakes had been properly coupled up, the moment the train parted both sections of it would have in-stantly stopped and the collision which ensued would have been avoided and the boy would not have been killed. It was not shown by the appellee what caused the six or eight rear cars of the south-bound train to part from the other cars ;

nor did the appellant offer any explanation of that occurrence.

At the close of the evidence the appellee offered one prayer, which was granted, and the appellant offered ten, of which the *fourth, fifth* and *tenth* were granted and the others were rejected. The verdict and the judgment thereon being in favor of the appellee, the appellant appealed and the rulings of the trial Court in granting the appellee's prayer and in refusing to grant the appellant's *first, second, third, sixth, seventh, eighth* and *ninth* prayers are assigned as errors for review in this Court. The prayers will be found set out at length in the Reporter's statement of the case.

The *first* and *second* prayers of the appellant go to right of recovery and were designed to withdraw the case from the jury, on the ground that no legally sufficient evidence had been adduced to show negligence on the part of the appellant in the discharge of its legal obligations to the deceased boy or to his mother. This opens up the whole law of the controversy.

Of course there can be no negligence where there is no duty that is due; for negligence is the breach of some duty that one person owes to another. It is consequently relative and can have no existence apart from some duty expressly or impliedly imposed. In every instance before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which duty would have averted or avoided the injury. This has been so often stated that it is not deemed necessary to elaborate it. As the duty owed varies with circumstances and with the relation to each other of the individuals concerned, so the alleged negligence varies, and the act complained of never amounts to negligence in law or in fact; if there has been no breach of duty. Thus the duty due by a common carrier to its passengers is entirely different from the duty owed by the same carrier to a trespasser on its right of way; and, therefore, an act which in the first instance would be negligent because a breach of the particular duty there due

would not be negligent in the second instance simply because the same duty is not due. The duty owed to a trespasser on a right of way is measurably less than the duty owed to the same person when not a trespasser but when entirely off the right of way. As said by this Court in *West. Md. R. R. Co.* v. *Kehoe*, 83 Md. 434 : "A railway company is not bound to anticipate that a person will be negligently or wrongfully on its tracks, but if its servants see a person in a place of peril on the right of way then the duty arises to avoid injuring him if possible. But to recover for an injury sustained when in such a position, the plaintiff must show (1) that the company's servants had knowledge of his peril (2) that they had knowledge in time to avoid an injury ; (3) that they then failed to exert proper care to avoid the injury." This doctrine, stated even more broadly, the appellant had the full benefit of it in its *fifth* instruction ; for the jury were there told that if the boy was on the right of way the appellee would not be entiled to recover although the death of the boy was the result of the appellant company not having air-baakes on the cars that became detached from the train, *"or the result of defective appliances or machinery."* But whilst the measure of duty due by a railroad company to a trespasser is as stated in *Kehoe's case, supra,* there is manifestly a higher duty due by railroad companies to persons on their own premises or lawfully on the premises of others. "So use your own rights and property as to do no injury to those of others, is a maxim of the law which imposes upon a railroad company a duty towards the public and towards each individual who is not himself a wrongdoer, and which is no less binding than when applied to natural persons in their ordinary relations. Numerous illustrations of the application of this doctrine might be given, but a few familiar ones will suffice. The maxim, though not as applying to a railroad company, was cited and adopted generally by this Court in *Scott* v. *Bay*, 3 Md. 446. That was a suit brought to recover damages which the plaintiff sustained by the quarrying of stone by the defendant on the latter's own premises. The blasting threw

large quantities of stone on the plaintiff's land.   The defend-
ant asked the lower Court to instruct the jury that the de-
fendant had a right to quarry stone from his quarries, and that
the plaintiff could not recover for any injury he sustained in
consequence of such quarrying, if the jury believed that
proper precautions were used in working the quarries, and
that such injuries were sustained without default of the de-
fendant.   The prayer was rejected and on appeal this Court
said: "In the first place, there is no sufficient evidence in the
record to warrant such a prayer, that proper precautions were
used in working the quarries.   But if proper precautions had
been taken, they would still constitute no vindication of the
defendant for the injuries resulting to the plaintiff.   Unless a
party can show a right, either in the nature of a presumed
grant or easement, or in some other mode, to use his property
in a particular way, he cannot use it in that particular way, if
it occasions injury to his neighbors, in the quiet enjoyment of
their legal rights and privileges, and it makes no difference
whether precautions were used or not to prevent the injury
complained of."   The same principle underlies the decision of
*B. & P. R. R. Co.* v. *Reaney*, 42 Md. 117.   There the rail-
road company had been given authority to construct a tunnel
under Wilson street, in the city of Baltimore.   In doing the
work the walls of Reaney's house were injured.   The house
stood on Madison avenue, nearly twenty-five feet northwest
of Wilson street, with another dwelling intervening between
it and Wilson street.   The excavation made for the tunnel did
not come within something over twenty-five feet of Reaney's
house, but did approach quite near the one adjoining it.   The
walls of the latter settled and that caused the walls of Rea-
ney's house to crack.   Reaney sued the company for the
damage thus inflicted and recovered a judgment.   On appeal
the judgment was affirmed, and this Court speaking through
JUDGE ALVEY said: "That there was no negligence or want
of care in doing the work, is no answer in a case like this.
*   *   *   *   *.   That the excavation of the street for the
tunnel was lawful, and done in a lawful manner at the time,

can constitute no defense to this action, if damages actually resulted from the work. There are many cases, in which an act may be perfectly lawful in itself, and will continue to be so, until damage has been done to the property or person of another; but from the moment such damage arises the act becomes unlawful, and an action is maintainable for the injury." And *Bonomi* v. *Backhouse*, Ell. Bl. & Ell. 662; *Smith* v. *Thackara*, L. R. 1 C. P. 564 and *Add. on Torts*, 9, are cited. The same doctrine was applied at an early date in actions of trespass. Thus in trespass *quare clasum fregit* the defendant pleaded that he had land adjoining the plaintiff's close, and upon it a hedge of thorns; that he cut the thorns, and that they, *ipso invito,* fell upon the plaintiff's land, and the defendant took them off as soon as he could, which was the same trespass, &c. On demurrer, judgment was given for the plaintiff, on the ground, that, though a man may do a lawful thing, yet, if any damage thereby befall another, he shall be answerable if he could have avoided it. *Broom's Leg. Max.*, 161, and cases there cited. It is true these last cases were in trespass and the declaration now before us is in case. But the prayers at present under consideration are demurrers to the evidence and make no reference to the pleadings; hence the right to recover depends not upon the form of the action or the state of the pleadings, but solely upon the case made by the proof. *Balto. Bldg. Ass.* v. *Grant*, 41 Md 569; *Leopard* v. *Canal Co.*, 1 Gill, 222.

There is another class of cases, more akin to the one stated in the declaration in this record, wherein it has been recognized as the settled law that when an injury results from the negligent performance of a lawful act a right of action arises by reason of the negligence. *B. & P. R. R. Co.* v. *Reaney*, 42 Md. 130; *Leader* v. *Moxon*, 3 Wils. 461; *Jones* v. *Bird*, 5 B. & Ald. 837; *Lawrence* v. *Gt. N. R. Co.* 16 Q. B. 653. The running of its trains by the railroad company was a lawful act, but was there negligence in permitting some of its cars to be hurled outside of the right of way whereby the injury was inflicted? It must be borne in mind that we are dealing with a

demurrer to the evidence and as there was some proof from which the jury could conclude that the boy, when killed, was not on the right of way, it must be assumed as a fact that he was not.

Let us see, then, first *what* caused the death ; and secondly, what *duty* due by the appellant was disregarded by it.

It is obvious that the injury would not have happened if the rear cars of the south-bound train had not become detached from those in front of them ; or, if the detached cars had been equipped with air-brakes in working order ; or, if just at the precise moment of the collision the caboose of the north-bound train had been clear of the siding and on the main track because then the glancing blow which threw the caboose to the side could not have been given. The concurrence of these three things produced the injury. Whilst each was prior in point of time to the one that succeeded it, when measured by minutes, or perhaps, seconds, all together constituted the efficient cause, but for the occurrence of which the boy would not have been killed. No independent act emanating from other agency than the defendant iteself intervened to give rise to the application of the doctrine of proximate and remote cause ; because all the three acts which combined to produce the death were acts of the appellant.

Now, it would seem to be a perfectly plain duty of a railroad company to keep its cars on the rails laid on its right of way, or at least, to keep them within the limits of its right of way. Every abutting land proprietor has a right to insist that this shall be done so that in using the dangerous agencies employed in operating the road, his person and property may not be injuriously affected. This duty is due not only to the abutting land owner but to every individual lawfully *on* contiguous property to the right of way. It is, therefore, a duty due every person along or who may be passing *along*, but not *on*, the right of way. And this duty springs out of the obligation upon the company to so use its own rights and property as not to injure the rights or the property of others. Starting with that duty, it is clear when a car has by a collision

been hurled outside the right of way and an injury has been inflicted on one lawfully there, a breach of duty has occurred and consequently there has been negligence, and for the injury thus inflicted an action will lie unless it be shown that an unavoidable accident was the efficient cause of the injury. No effort was made to do this, and therefore, it does not become necessary to trace back of the breach of duty which occasioned the injury the causes which produced that breach or to ascertain whether the causes of the cause were themselves acts of negligence.

From the views we have expressed it is quite clear in the light of the conflicting evidence as to whether the boy was within or outside of the right of way, that the Court was entirely right in refusing to withdraw the case from the consideration of the jury ; and it only remains to inquire whether there was any error in the other rulings to which exception was reserved.

The appellant's *third* prayer proceeds upon the theory that if the boy was standing, when killed, within the company's right of way then no cause of action exists even though the cars which broke away from the south-bound train and collided with the other train were not provided with air-brakes or connected up with with the air-brake appliances. There was no error in rejecting that prayer, for the plain reason that its theory was distinctly covered by the *fourth* and *fifth* which were granted. The theory which both the *fourth* and *fifth* instructions announce is that the failure to use appropriate appliances to prevent such collisions as the one described cannot be relied on by a *trespasser* as evidence of an omission by the company to discharge any duty which it owed to him. It would have been error to repeat that same doctrine by granting the *third* prayer.

The appellant's *sixth* prayer was radically defective. It asked the Court to rule that "under all the circumstances of this case the defendant owed no duty to the deceased" to equip its cars or any of them with air-brakes, and that even if the death of the boy resulted from the company's failure to

672    W. VA. CENTRAL R. CO. vs. FULLER.

Opinion of the Court.    [96

so equip its cars no recovery could be had. Had the prayer been granted the legal conclusion deducible from it is this : Even though the boy had *not* been on the right of way and even though by the failure to supply air-brakes the company had *not* so used its rights and property as to avoid injury to others to whom it owed a duty of not inflicting an injury upon them ; still no recovery could be had. What has been said in disposing of the *first* and *second* prayers of the appellant is sufficient to show the fallacy of this *sixth* prayer.

The *seventh* prayer is defective in that it undertakes to divide up and segregate the several elements which constitute the final and ultimate cause of the injury and to say that inasmuch as the parting of the train and not the failure to have air-brakes was the proximate cause of the accident, no recovery could be had because there was no evidence to show that the severing of the train was due to any negligence on the part of the appellant. It is clear that this prayer entirely ignores the difference in the duty owed by the company to a trespasser and to one not a trespasser on its right of way, and wholly disregards the principle that the company in using its own appliances was bound to so use them as not to injure another in the lawful pursuit of his rights. If the boy was killed when *not* on the right of way, then the company did not so use its own rights and property as not to injure another and in consequence was responsible, because the failure to keep within its right of way was, in the circumstances stated, a breach of duty that it owed to every one so situated, and was, therefore, negligence ; and it was not incumbent on the appellee to prove that there had been antecedent negligence producing the ultimate negligent act. The act claimed to be the ultimate negligent act being established the appellant was then required to show in exculpation or defense, that the act was an unavoidable accident which did not proceed from prior or coincident negligence. .

A kindred vice runs through the *eighth* and *ninth* prayers. By the *eighth* the Court was asked to say to the jury that if but for the intervention of the train of empty freight cars, the de-

tached cars from the south-bound train would have gone on down the track without injuring the deceased, then no recovery could be had unless there had been negligence in drawing the train of empty cars from the siding ; and by the *ninth* an instruction was sought to the effect that there was no evidence of negligence in so drawing the train of empty cars from the siding *or* that the parting of the south-bound train was in any way caused by the negligence of the appellant. The actionable negligence did not consist of one or the other of a series of acts, but in the ultimate outcome of all. Separated and wholly segregated from everything else there may have been no negligence in the act of moving the train of empties from the siding ; but when the concurrence of that act with the parting of the other train and with a failure to equip the cars with airbrakes in working order resulted in a collision which threw the caboose outside of the right of way ; and when the throwing of the caboose outside of the right of way is the thing which caused the death, that act, and not the antecedent steps which led to it, must be treated as the efficient cause of the injury and the act of negligence for which the appellant is answerable, because that is the act whereby the railroad company, in exercising its own rights exceeded the limits of those rights and inflicted an injury outside of its right of way upon a person towards whom it owed the duty not to inflict such an injury as that person was then situated.

The plaintiff's or appellee's prayer whilst very general is not open to such criticism as would justify a reversal. *B. & O. R. R. Co.* v. *State, use of Trainor,* 33 Md. 545.

As we find no errors in the rulings complained of the judgment will be affirmed.

*Judgment affirmed with costs above and below.*

(Decided March 31st, 1903.)