BAIRD ET AL., TRADING AS BAIRD SEATING COMPANY *v.* THE CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF BALTIMORE CITY

SAME *v.* REUBEN H. DONNELLEY CORPORATION

SAME *v.* THE CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF BALTIMORE CITY AND REUBEN H. DONNELLEY CORPORATION

[No. 14, October Term, 1955.]

246

*Decided November 9, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Charles G. Page* and *R. Taylor McLean,* with whom were *White, Page and Lentz,* on the brief, for appellant.

*William L. Marbury,* with whom were *Piper and Marbury* on the brief, for appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by William F. Baird, Sr., William F. Baird, Jr., and Robert S. Baird, a partnership trading as Baird Seating Company, (Baird), from the amount of a judgment rendered in its favor against the Chesapeake and Potomac Telephone Company of Baltimore City, (the Telephone Company), and from a judgment for costs in favor of Reuben H. Donnelley Corporation, (Donnelley).

On October 3, 1952, Baird filed suit against the Telephone Company and Donnelley in the amount of $25,-000.00. The first count or claim was based on breach of contract against the Telephone Company alone. The second count or claim was based on breach of contract against Donnelley. The third count or claim was based on tort for the alleged tortious action of Donnelley in causing the Telephone Company to breach its contract with Baird and for the alleged tortious action of both the Telephone Company and Donnelley in illegally discriminating against Baird by failure to carry the advertisements of Baird in the classified directory of the Telephone Company issued in June, 1950.

Baird has been in business under its present name since 1925. It specializes in supplying seating for churches, schools, other institutions and industry. It manufactures and sells chancel furniture, pulpits, communion railings, altars and other church accessories. From sixty-five to seventy-five percent of its business is cabinet work made from either an architect's or its own drawings for a particular building. Part of this cabinet work is done by from fifteen to eighteen men in Baird's plant. The remainder, if not manufactured by Baird, is ordered on

specification from another church furniture company in the west. It also sells chairs for Sunday schools and parish houses, handling a large number of steel folding chairs and folding tables. It does not rent any of its products. Its business is competitive, one competitor in Baltimore City being Church House, Inc., which started business in 1946 or 1947. Church House, Inc., also operates under the name of Ave Maria, which is advertised under a separate name. Baird had maintained its plant on North Howard Street in Baltimore until the end of 1947 when it moved to 2409 West Baltimore Street on January 1, 1948. Baird had been listed and carried advertising in the classified directory of the Telephone Company ever since it had been in business. In the 1949 issue of that directory it carried a number of listings and ads under the listings "Church Furniture", "School Furniture", "Folding Chairs", and "Folding Tables".

On December 13, 1948, Baird entered into a contract with the Telephone Company which provided for listing in capital type under the headings above mentioned and for special inch, two inch and larger insertions under "Church Furniture" and "School Furniture". According to the terms of the contract, the Telephone Company agreed "To continue all such advertising in each succeeding issue until this agreement is cancelled by written notice from either party thirty (30) days or more prior to the date on which the succeeding issue goes to press." The classified listing and advertising, as called for in the 1948 contract, appeared in the 1949 issue of the Telephone Company directory and was duly paid for. It was completely omitted from the 1950 telephone directory which was issued in June of that year, except for a small listing (not capitalized) under "Chairs".

Baird's rival carried large ads in the 1950 directory, which dominated the whole church furniture classification. Baird claimed that its real damage came from the complete omission of its name under the important classification of its business. Testimony was offered that

Baird's "Church Furniture" business came from the clergy, architects, contractors and church boards, who depended upon the classified directory to find Baird's name. Baird contended that in addition to this loss, the omission of its name was even more important because it had moved its business location. Baird offered testimony that by including the Church House, Inc., advertisement and omitting its advertisement in the 1950 directory, and particularly on account of the fact that Baird had moved, Church House became much stronger and Baird lost considerable business because many · of its customers went to the old location, and not finding Baird there or its advertisement in the telephone directory, thought it had gone out of business. The same thing applied to its sale of folding chairs and other chair business and also to its sale of school furniture. The importance of advertising in the telephone directory was emphasized by the Telephone Company's advertising the importance of its listings.

When Baird discovered the omission of its advertisements from the 1950 directory it was very much amazed. The Telephone Company was immediately notified and Baird's attorney was consulted. An advertising specialist, Mr. McKinless, was employed for advice as to the proper procedure to follow to overcome the damage. The Public Service Commission was also notified. Mr. McKinless recommended a plan of advertising and he was employed at a retainer of $75.00 per month. His plan was adopted and put in use within thirty days. It was to cost Baird from $5,800.00 to $6,000.00 and approximately that much was spent. In Mr. McKinless' opinion, even that advertising would not counteract the omission of Baird from the telephone directory.

The contract between Baird and the Telephone Company was dated December 18, 1948. It was on a printed form prepared by the Telephone Company which agreed: "To insert in said directory the advertising specified below under 'In' for a minimum period of one issue

beginning with the 1949 issue." Pursuant to that agreement the advertising was inserted in the 1949 issue. That contract contained the above quoted clause about continuing the advertising until cancelled by written notice by either party. On the back of the contract in fine print apeared the following clause: "In the event of any error in or omission of the advertising for which application is hereby made, the Telephone Company will not be held liable for an amount exceeding the amount of the advertising charge." This clause will be referred to herein as the "limitation of liability clause." Donnelley was not mentioned in that contract and the Telephone Company did not enter into its contract with Donnelley until February, 1949. Baird had never heard of Donnelley.

On February 9, 1949, the Telephone Company signed a contract with Donnelley which gave Donnelley an exclusive franchise to solicit and sell advertising in the classified directory and to prepare proof for printing. Donnelley agreed to sell and solicit advertising in a business-like manner. All contracts were to be taken in the name of and on forms furnished by the Telephone Company. Donnelley was required to furnish the Telephone Company with the advertising contracts and to rewrite and revise when necessary. Donnelley further agreed at its expense to furnish the art work and to employ the necessary engravers. Donnelley was required to review all advertising proofs and to submit those proofs to the advertisers for approval. Where the advertiser contacted the Telephone Company with instructions to cancel, the Telephone Company was required to refer the matter for investigation to Donnelley. Donnelley was to supply a representative to adjust complaints of advertisers. Donnelley further agreed to indemnify the Telephone Company against "all claims, demands, actions or causes of action arising or growing out of loss or damage resulting in any manner from anything negligently done or omitted by (Donnelley)."

Pursuant to these contracts, a Donnelley salesman called on Baird in June, 1949, and inquired whether Baird wanted its advertising continued in the June, 1950, issue of the telephone directory. The salesman was informed by Baird that the advertisements were to continue as they appeared in the 1949 classified directory under the existing contract between the Telephone Company and Baird. On September 27, 1949, without any explanation, Donnelley delivered to the Telephone Company an instruction to cancel the existing contract with Baird and to omit all the advertising material in the 1950 issue. The Telephone Company made no attempt to contact Baird to verify this order of cancellation. Its instructions from Donnelley came in the form of a sales report which merely instructed the Telephone Company to remove Baird's advertising. The Telephone Company then marked the original contract cancelled. It was impossible to determine why Donnelley instructed the Telephone Company to cancel Baird's advertising. The salesman who contacted Baird was no longer in the employ of Donnelley. He was subpoenaed but did not appear in court. The salesman's market card, which was supposed to contain a report, was missing. In answer to an interrogatory, Donnelley stated: "No market cards are available due to the fact that they are only kept in file for a period of one year following the delivery of any particular directory." The omission of Baird's listing was discovered by Baird in May, 1950. Baird claimed that it was out of the ordinary for a sales report to be destroyed on which there was a claim pending and neither the area manager nor division sales manager of Donnelley could explain its disappearance. Baird claimed that the testimony of Mr. Haslett, Donnelley's District Sales Manager, showed that he was not sincere. In a pre-trial deposition under oath, he admitted that he had investigated the claim. He did not remember anything about the sales report nor did he remember any inquiry about sales reports or about their disappearance. It would have been

normal for him to have called for records of the Baird account. He did not recall receiving them. He did not admit that their absence was unusual. He insisted that he recalled the facts of the investigation but his examination did not disclose any facts. He was the only one available who apparently had any knowledge of the facts. He did not respond to a subpoena to appear in court.

Donnelley knew of Baird's contract with the Telephone Company and instructed the Telephone Company to cancel Baird's contract and listings. Baird never gave any instructions to that effect and there was no reason for Donnelley to so instruct the Telephone Company. Donnelley offered no explanation of its actions and its records have mysteriously disappeared.

Baird claimed that the public has been educated to rely on the yellow pages of the telephone directory where substantially all businesses are listed and the omission of such listing is almost a representation that the business does not exist. Baird also claimed that the failure of the Telephone Company to include its two and three inch advertisements was damaging, particularly in view of its competitor's advertising and the failure to list Baird under its proper classification was far more damaging.

The case was tried before the trial judge without a jury. He rendered judgment in favor of Baird for the sum of $594.00, which he arrived at under the limitation of liability clause by taking the charge of the Telephone Company to Baird for the costs of advertising and listing at $49.50 per month multiplied by the twelve months involved in the 1950 classified directory. He also rendered judgment for Donnelley for costs. From those judgments Baird appeals.

As to the first count of the declaration there is no doubt that the Telephone Company breached the contract. The question therefore arises as to whether the limitation of liability clause limiting liability for omission of advertising to the amount of the advertising charge is valid. Ap-

pellant relies on "Escape Clause" cases. See 2 *Restatement, Contracts,* Sec. 575; *Williston, Contracts,* (Rev. Ed.) Sec. 1751 (c), at page 4971; *Bisso, Receiver v. Inland Waterways Corp.,* (decided May 16, 1955), 349 U. S. 85, 79 S. C. 629; *Birney v. Telegraph Co.,* 18 Md. 341; *Ch. & Pt. Tel. Co. v. B. & O. Tel. Co.,* 66 Md. 399, 414, 415, 7 A. 809. We do not deem this clause to be an escape clause which relieves a contractor from liability for violation of the contract. It merely limits liability. The escape clause cases are therefore not in point here. Appellant relies strongly on the Mann-Elkins Amendment to the Interstate Commerce Act which permits a telegraph company to file rate schedules with a provision for limited liability unless the sender of a message pays an additional sum for what is known as a repeat message. In such cases the person who sends the telegram has a choice. He can get the cheaper rate based on limited liability or by paying an additional charge, be protected. *Union Pacific Railroad Co. v. Burke,* 225 U. S. 317, 41 S. C. 283. Appellant also places great reliance on the telegraph cases such as *Western Union Telegraph Co. v. Nester,* 309 U. S. 582; *Birney v. Telephone Co., supra; U. S. Telegraph Co. v. Gildersleve,* 29 Md. 232. In those cases an attempt was made by the companies to escape liability in the performance of the transmission of messages which was their primary duty. The measure of liability there established bore no real relationship to the value of the services for which the customers contracted. The transmission of messages is under the jurisdiction of the public authorities and the customers pay only such charges as are fixed by the authorities based on a reasonable return on the business used for the public service. The instant case involves advertising in the telephone directory which is not the primary function of the Telephone Company and for which no rates have been fixed. Contrary to the lack of reasonable relationship between telephone service and the rates charged, there is a reasonable relationship between what the advertising is worth and the price which

the customer is willing to pay for it. This Court, in *N. Y., P. & N. R. R. v. Prod. Exchange,* 122 Md. 215, 226, 89 A. 433, quoted the following from *Missouri, K. & T. R. Co. v. Harriman,* 227 U. S. 657: " 'The liability imposed by the Statute [the Carmack Amendment] is the liability imposed by the common law upon a common carrier, and may be limited or qualified by special contract with the shipper provided the limitation or qualification be just and reasonable, and does not exempt from loss or responsibility due to negligence.' "

The Public Service Commission of Maryland, although regulating the rates for telephone service, has never regulated or assumed any jurisdiction over the rates charged or contracts between telephone companies and directory advertisers. In *Hamilton Employment Serv. v. N. Y. Telephone Co.,* 253 N. Y. 468, 171 N. E. 710, (1930), the contract for services included a clause limiting liability for damages arising from errors or omissions in the printing of directories. The Court of Appeals of New York held that unless this condition was reasonable, it was not binding upon the plaintiff, and that the preparation and delivery of a telephone directory was not the primary business of the telephone company and was wholly subordinate to the main transaction of transmitting messages. In *McTighe v. New England Telephone & Telegraph Co.,* 216 F. 2d 26, (C. A. 2, 1954), the court had before it contractual provisions measuring the liability of the telephone company for directory omissions which also involved a contractual provision fixing the measure of damages for omission of listings from the classified directory. Judge Medina there said: "It is not disputed that the classified directory was outside appellant's duties of public service and was 'a vehicle to secure advertising.' The trial judge [District Court for Vermont] also recognized that the classified directory was not controlled by the Public Service Commission, but was 'governed by the general law of contracts.' Notwithstanding this, however, in his charge to the jury, the trial judge at-

tached to the limitation of liability provision in the advertising contract the same qualification as he attached to the limitation of liability provision in the service contract. Here, again, the instructions were not in accord with the law as declared by the decisions of the Supreme Court of Vermont. In entering into the advertising contract, the telephone company in its private capacity contracted as to matters outside the scope of its public service functions, and was free to include in the contract a limitation of liability, as this would not operate to defeat its public purpose."

It is said in *Corbin on Contracts*, Vol. 5, Sec. 1068, pages 323 and 324: "If a contract provision is held to be one for a penalty, it will have no effect upon the damages to be recovered; and occasionally they will exceed the penalty. Nevertheless, the courts see no harm in express agreements limiting the damages to be recovered for breach of contract. Public policy may forbid the enforcement of penalties against a defendant; but it does not forbid the enforcement of a limitation in his favor. Parties sometimes make agreements and expressly provide that they shall not be enforceable at all, by any remedy legal or equitable. They may later regret their assumption of the risks of non-performance in this manner; but the courts let them lie on the bed they made. Where a contract provides that damages for breach shall not be recoverable beyond a specified sum, it is obvious that the risk of loss beyond that sum is being assumed by the promisee. If the law allows him to assume the whole risk, with no remedy whatever, it is obvious that it will allow him to assume a part less than the whole. If the contract provision is interpreted as fixing a maximum, rather than a liquidation of damages, the plaintiff will be given judgment for no more than the amount of injury that he proves, with the agreed maximum as the upper limit. If the breach of contract is also a tort or involves the commission of a tort, a provision limiting the liability in damages for the breach may not be opera-

tive as a limitation of the liability in tort. This involves not only a problem of interpretation of the provision but also a problem of public policy; under some circumstances a bargain for exemption from liability for tortious conduct is held to be against the public interest and illegal."

In *Russell v. Southwestern Bell Telephone Co.*, 130 F. Supp. 130, (E. D. Tex., 1955), the court relied on *McTighe v. New England Telephone & Telegraph Co., supra,* and said: "The advertising contract signed by both plaintiff and defendant specifically provided that plaintiff agreed that the defendant's maximum liability for damages arising out of errors or omissions in the directory of advertising should be limited to the amount charged for such directory advertising. There can be no question about the validity of this provision and its binding effect on the plaintiff." It is said in *Restatement of Contracts,* Section 575(2), page 1081: "A bargain by a common carrier or other person charged with a duty of public service limiting to a reasonable agreed valuation the amount of damages recoverable for injury to property by a non-wilful breach of duty is lawful." See also *Brehme v. Adams Express Co.*, 25 Md. 328. The clause limiting the damages for breach of contract to the cost of the advertising does not seem to be unreasonable. Baird is not claiming damages for loss of business but for the sum of $5,265.37 which it spent for other advertising and which it claims was necessary to make up for the loss of the advertising in the telephone directory. It is reasonable to suppose that Baird could determine the names of churches and other businesses and organizations who were potential customers. To circularize these would hardly cost more than the amount of the judgment rendered in its favor. It is significant that, even after the year 1950 when Baird's advertisements were inserted in the telephone directory, it has continued the same advertising campaign as it conducted during the year 1950. We are of opinion that the limitation of liability clause here was valid.

Appellant bases its claim of tort liability against the Telephone Company upon the provisions of Code, 1951, Article 78, Section 70 (a) and (b), which read as follows: "(a) Every telegraph company or telephone company within the jurisdiction of this Commission shall provide such service and facilities as shall be adequate, just and reasonable. All rates, tolls and charges used, made or demanded by any such telegraph company or telephone company for any telegraphic or telephonic communication or service shall be just and reasonable and not more than allowed by law or by order of the Commission and made as authorized by this sub-title. (b) No telegraph or telephone company shall make or give any unjust or undue preference or advantage in rates charged or demanded, or in any other respect whatsoever, or subject any particular person, corporation or locality to any unfair prejudice or disadvantage, but shall furnish equal facilities to their patrons and transmit all messages in the order in which they are received." According to the evidence in this case there is no proof that either the Telephone Company or Donnelley intentionally discriminated against Baird. The omission appears to be due to an error. Appellant in its brief states: "Presumably there was some administrative breakdown" on the part of Donnelley. The above quoted statute, in the opinion of this Court, applies to intentional discrimination. The case of *Baltimore & Ohio Railroad Co. v. Pumphrey*, 59 Md. 390, involved an action against a common carrier for the breach of contract for the carriage and delivery of goods. This Court said in that case at pages 398 and 399: "The foundation of the action was a contract made between the plaintiff and defendant, and the breach of that contract on the part of defendant. The suit was brought for a wrong, dependent upon a contract and the first question we have to decide is, what is the true measure of damages in such a case. It makes no difference whether the form of the action is *ex delicto* or *ex contractu,* the real and substantial gravamen of the complaint

is the alleged breach of the contract, and in such a case the same law is applicable to both classes of action. In actions like the present, against common carriers, the suit may be framed, either *ex contractu,* upon the breach of the engagement, or *ex delicto,* upon the violation of the public duty; but whether the action be *assumpsit* on the contract, or case for the violation of duty, the measure of damages is equally a question of law, and as much under the control of the court as if the right rested in agreement merely." The limitation of liability clause here is valid. As Baird has recovered against the Telephone Company under the contract provisions, it has obtained all damages rightfully payable to it by the Telephone Company. See *Russell v. Southwestern Bell Telephone Co., supra,* page 134; *U. S. Telephone Co. v. Gildersleve, supra;* and *Hadley v. Baxendale,* 9 Exch. Reports 341.

As to the contract action against Donnelley, it is apparent that Donnelley was not an independent contractor and therefore owed no duty under its contract to Baird. The contract between the Telephone Company and Donnelley was not made for the benefit or advantage of Baird. It provided, among conditions other than those hereinbefore set out, that the Telephone Company was to have "full control of the advertising specifications, the space and class of advertising to be sold, the heading treatment, make-up, position of display advertising, and the general appearance of the directories. * * * CONTRACTS. All contracts with advertisers shall be taken in the name of and on forms furnished by TELEPHONE COMPANY: PROVIDED, HOWEVER, that contracts for advertising sold to subscribers of the TELEPHONE COMPANY shall be taken in the name of said TELEPHONE COMPANY, the forms of such contract being furnished by TELEPHONE COMPANY. ACCEPTANCE OF CONTRACTS. Contracts for advertising shall not be binding until accepted in writing by a duly authorized representative of TELEPHONE COMPANY, it being understood that TELEPHONE

COMPANY has the absolute right to reject all or any contracts which for any reason are not satisfactory to it." It is apparent that the Telephone Company had not delegated to Donnelley the responsibility which it owed to Baird. *East Coast Freight Lines v. Consolidated Gas Co.*, 187 Md. 385, 50 A. 2d 246; *Marlboro Shirt Co. v. Am. Dis. Tel. Co.*, 196 Md. 565, 77 A. 2d 776.

Appellant argues that Donnelley is liable in tort because Donnelley has been guilty of inducing a breach of contract. It relies on *Knickerbocker Co. v. Gardiner Co.*, 107 Md. 556, 69 A. 405; *Cumberland Glass Mnf'g. Co. v. DeWitt*, 120 Md. 381, 87 A. 927; and *Stannard v. McCool*, 198 Md. 609, 617, 84 A. 2d 862. In those cases there was an intentional interference with contract rights of other parties. Here, appellant admits that the omission was due to an administrative breakdown by Donnelley. No intentional interference is here shown.

Appellant finally argues that Donnelley is liable for negligence in giving the erroneous instructions to the Telephone Company to cancel its advertisements. In *East Coast Freight Lines v. Consolidated Gas Co., supra,* Chief Judge Marbury pointed out that negligence necessarily involves the breach of some duty owed by the defendant to the plaintiff. In that case he quoted the following from the case of *West Virginia Central & P. R. Co. v. Fuller,* 96 Md. 652, 666, 54 A. 669, 61 L. R. A. 574: "Of course there can be no negligence where there is no duty that is due; for negligence is the breach of some duty that one person owes to another. It is consequently relative and can have no existence apart from some duty expressly or impliedly imposed. In every instance before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which duty would have averted or avoided the injury. This has been so often stated that it is not deemed necessary to elaborate it." In *Otis Elevator Co. v. Embert,* 198 Md. 585, 597, 84 A. 2d 876, Judge Markell said: "The absence of tort liability

for breach of contract is not qualified by the distinction between non-feasance and misfeasance. In such cases such a distinction is not between non-performance and 'misperformance' of a contract, but only between conduct, in breach of a contract, which constitutes only a breach of contract and conduct which also constitutes a breach of duty, arising out of the nature of the work undertaken and the conduct, to third persons." As we find no error the judgments will be affirmed.

*Judgments affirmed, with costs. Costs in this Court to be paid by appellant.*