Cole *vs.* Ensor, *et al.*

in a particular way, he cannot use it in that particular way, if it occasions injury to his neighbors, in the quiet enjoyment of their legal rights and privileges, and it makes no difference whether precautions were used or not to prevent the injury complained of.

It is a rule of the common law, that a man should so use his own property as not to hurt or injure another, and therefore if one carry on a lawful trade or business in such a manner as to prove a nuisance to his neighbor, he must answer in damages. There are many cases in the books where this doctrine has been applied, and among the number are those where a man erects a smith's forge, swine-sty, lime-kiln, tallow-furnace, machine-shop, quarry or privy, so near the dwelling-house of another as to render it unfit for occupation. *Bradley vs. Gill, Lutw.*, 69. *Aldred's case*, 9 *Coke*, 58. *Jones vs. Powell, Hutton*, 135. *Morly vs. Pragnel, Cro. Car.*, 510. *Rich vs. Basterfield*, 56 *Eng. C. L. Rep.*, 786. *Fish vs. Dodge*, 4 *Denio*, 311. And, especially, for the general principles applicable to this case, the court would refer to the case of *Hay vs. The Cohoes Company*, 3 *Barbour*, *(N. Y.,)* 42.

For the reasons assigned, we think the court below was right in rejecting the defendant's prayers, and therefore we affirm its judgment.

*Judgment affirmed.*

---

## SALATHIEL COLE, EXC'R of ARTRIDGE COLE, *vs.* ABRAHAM ENSOR and wife, and others.

A testatrix devised to her grandson her negro Beck, "together with all the rest and residue of my estate, consisting of household furniture, cattle, horses, farming utensils, all and singular, of whatever kind named or intended to be named, likewise all the produce of the farm, and all the produce that shall be growing on the same at the time of my death." At her death she owned ten slaves, not particularly referred to in the will. Her

Cole vs. Ensor, et al.

whole estate was valued at $4104, of which said ten slaves constituted $2105. HELD: that by the proper construction of this clause, said ten slaves did not pass.

The words "rest and residue of my estate," are qualified and restricted by the words "consisting of," the effect of which are to indicate that the testatrix intended to enumerate what she considered to be the *rest and residue* of her estate, and what she designed should pass under that general designation.

The fact that she mentions by name "her negro girl Beck" as a part of the property intended to pass under this clause, excludes the idea that her other negroes were also to pass under the same clause.

The expression, "all and singular, of whatever kind named or intended to be named," should be confined to the property previously designated, namely, "household furniture, cattle," &c.

The addition, "likewise all the produce on the farm, and all the produce that shall be growing on the farm at my death," was added with a view more minutely to designate the property designed to be embraced in this clause, and to exclude all other not named.

The fact that the testatrix descends to a minute enumeration of the articles of property which she designed to pass by this clause, but omits all mention of these ten slaves, which were equal in value to all her other property, shows that she did not intend to pass them under the will.

APPEAL from the Orphans Court of Baltimore county.

Salathiel Cole, by his will, executed on the 22nd of August 1822, devised all the rest and residue of his estate, both real and personal, to his mother, Mrs. Artridge Cole, during her single life, and after her death or marriage, then over to his sisters. Part of this residue consisted of two negro women, *Mary* and *Harriet*, who, while in possession of Mrs. Cole, the tenant for life, had issue, ten children. Mrs. Artridge Cole, by her will, executed on the 14th of December 1847, after several specific bequests, gave to her daughter, Maranda, negro Abraham, and to her grand-daughter, Mary E. Cole, negro girl Lucy; and then, by the sixth clause of her will, devised to her grand-son, Salathiel Cole, in the words quoted in the opinion of this court. Her property, including the ten negroes, above mentioned, as shown by the inventory, amounted to $4104.41, of which said negroes constituted $2105.

The appellees filed their petition in the orphans court, alleging, that Mrs. Cole died intestate as to these ten negroes,

and claiming distribution thereof among the petitioners, as distributees. The appellant, who was the residuary legatee and executor of the will, answered, claiming said negroes under the residuary clause.

The appellees took the deposition of two witnesses, one of whom testified, that Mrs. Cole repeatedly declared that she had no interest in the increase of *Mary* and *Harriet*, but that such increase belonged to her daughters, who were the devisees in remainder under the will of Salathiel Cole. The other witness, who drew the will of the testatrix, stated that she gave the items of her property to him, but failed to enumerate any of said increase in the list. The admissibility of these depositions was excepted to by the appellant.

The orphans court decided, that there was "*intrinsic* evidence enough in the cause, and sufficient clearness in the sixth clause of the will, to direct a proper interpretation of the subject in controversy without the aid of other testimony;" that the testatrix died intestate as to said negroes, and decreed distribution among the petitioners, as prayed. From this decree this appeal was taken by the appellant.

The cause was argued before Le Grand, C. J., Eccleston and Mason, J.

David Stewart for the appellant.

The effect of a residuary clause, in point of law, is to carry all the property not disposed of, whether the testator knew he possessed it or not, upon the ground that the residuary legatee stands in court with the presumption in his favor, that all the property not legally and effectually given out of the residue belongs to him. 8 *Ves.*, 14, 25; *Cambridge vs. Roves.* 1 *Roberts on Wills*, 503. 3 *Howard Miss. Rep.*, 337, *Vick vs. McDaniel.* The residuary clause here is the last item in the will except the appointment of the executor. The words are "rest and residue of my estate," "*all and singular of whatever kind, named or intended to be named.*" The antecedent of "all and singular," &c., is the "rest and residue of

my estate." The words "all and singular," &c., cannot refer to farming utensils, for none of them *are named.* The devise is of all she had named or intended to be named. There is no designation of ploughs, harrows, &c. Where the intent is manifest, the words of the will will be transposed, altered or supplied to effectuate it. The doctrine of *ejusdem generis* is not, according to the later decisions, to be taken in a restrictive sense. 1 *Jarman on Wills*, 698 to 700, and cases there cited. 15 *Ves.*, 500, *Campbell vs. Prescott.* 11 *Eng. Law and Eq. Rep.*, 336, *Fisher vs. Hepburn.* In the case in 1 *Wharton*, 362, 365, relied on by the other side, the words, "all and singular, named or intended to be named," are not to be found, and in 3 *Rand*, 191, the bequest was not given in terms as a residuary clause.

*Geo. M. Gill* for the appellee.

The object, in all cases of construction of wills, is to get at the *intent* of the testator. The testatrix here was, at her death, entitled to three negroes, which she gives to her near relatives, *specifically*, and these are the only slaves mentioned in her will. But she was entitled to *ten others* which, by the laws of this State, were vested in her absolutely, being the issue of negroes in which she had a life estate, but of this fact she was ignorant, supposing that they passed under her son's will to her daughters, as to whom she makes no provision by her will. So far as the *intent* then is concerned, there cannot be a doubt. The value of these ten negroes is more than half her whole estate, and she did not suppose, when she made her will, that she was doing injustice to her daughters. That the evidence was properly in to show the circumstances that existed at the time of making will, see 1 *Peere Wms.*, 302, *Cook vs. Oakley.* 2 *Atk.*, 102, *Timewell vs. Perkins.* But again, the true construction of the clause itself will not pass them. She speaks of the rest and residue as *consisting of* household furniture, cattle, horses and farming utensils; no mention is made of slaves, and it is only articles *ejusdem generis* that she intended to dispose of.

57    v.3

*Wharton*, 362, *Delamater's Estate.* 3 *Rand.*, 191, *Minor's Exc'x, vs. Dabney.*

*John Nelson* on the same side.

1st. The first inquiry is, whether the depositions offered below are admissible. We do not offer them for the purpose of *varying the terms of the will*, but for the purpose of showing the circumstances and condition of the estate in order to ascertain whether it was the intent of the testator to act upon the property in dispute by her will. We can show that she was ignorant that she owned this property, and therefore, did not design to dispose of it. 1 *Peere Wms.*, 302. If this evidence is admissible, the case is clear of all doubt. But the terms of the will, independent of this extrinsic evidence, very clearly show that she did not intend to dispose of this property. She specifically bequeaths, *by name*, every slave she had except these. She gives one negro, *by name*, to the very legatee to whom she gave this residue.

2nd. But the case is clear upon the construction of the clause itself. I give and bequeath "all the rest and residue of my estate, *consisting of*" particular things. Now what does not *consist* of such particular, enumerated things, does not pass. The words "all and singular, named and intended to be named," apply and refer to their immediate antecedents, "household furniture," &c. Applied to these they have a meaning, for the articles are not enumerated; applied to the "rest and residue," they have none, but are surplussage. This construction is strengthened by the following proviso, "likewise all the produce of the farm," &c., covering other articles not embraced by the preceding clause. There is no authority in conflict with this interpretation, but on the contrary the authorities are clear in our favor. 2 *Atk.*, 103. 2 *Ves.*, *Sen.*, 277, *Boon vs. Cornforth.* 1 *Cox.*, 77. 1 *Whart.*, 362, is identical with this case. 3 *Rand.*, 191. The same principle has been decided by this court in 1 *Md. Rep.*, 344, *McChesney vs. Bruce.* The terms "*consisting of*," necessarily limit the meaning to the things enumerated. 20 *Pick.*, 252. 11 *Eng. Law and Eq. Rep.*, 336.

*Charles F. Mayer* for the appellant, in reply.

If this parol evidence be admitted for the purpose of showing what were the circumstances of the testator, it would make the court the testator and arbiter of estates in every case. Such evidence may all be very well before a jury where the will is attacked and its validity is disputed, but cannot be allowed where the court are called upon to construe a will assumed to be valid. If there be error apparent upon the face of the will it may be corrected, but you cannot go outside of it to show that there was error, or that the testatrix did not mean what she said. No matter what property the testatrix had, or what she knew she had or not, it passes by the residuary clause. This is an elementary principle in the construction of wills, and would be controverted by the introduction of this evidence. You must look to the will to see what the intentions of the testator are. 10 *G. & J.*, 191. 1 *Johns. Ch. Rep.*, 234. 21 *Eng. C. L. Rep.*, 288, *Miller vs. Travers.* 8 *Ves.*, 14. 15 *Ves.*, 503. *Do.*, 589, *Bird vs. Lefevre.* 4 *Russell*, 360.

As to the construction of the clause itself: The terms, "all and singular, named or intended to be named," refer to the "rest and residue" of her estate. The enumeration does not affect the previous general bequest. The term *"consisting"* has no such restraining effect as contended for. That which is *purely descriptive* has no effect upon the *prior terms of the grant.* 8 *Ves.*, 14. Here, if the testator had said all the rest of my estate, *to wit,* &c., it would be only a defective enumeration. The case in *Whart.*, does not rely upon the word *consisting.* It simply decides that the term "claims and demands," did not, *ex vi termini*, include *stock.* The case in 2 *Atk.*, was simply as to the meaning of the word "estate," and *Lord Hardwicke* did not advert to the term *"consisting."* So also in *McChesney vs. Bruce*, 1 *Md. Rep.*, 344. The case in *Peere Wms.*, is overruled by the more modern decisions which have repudiated the old rule of restrictive construction—the doctrine of *ejusdem generis.* 1 *Russell*, 276, *Fleming vs. Burrows.*

MASON, J., delivered the opinion of this court.

The present controversy grows out of the construction of the following clause in the will of Mrs. Artridge Cole, to wit: "I give and devise unto my grandson, Salathiel Cole, my negro girl Beck, together with the rest and residue of my estate, consisting of household furniture, cattle, horses, farming utensils, all and singular, of whatever kind, named or intended to be named; likewise all the produce of the farm, and all the produce that shall be growing on the farm at the time of my death."

At the time of the death of the testatrix she was owner of ten negro slaves, which were not particularly mentioned or referred to in the will. The whole estate of Artridge Cole was valued at $4104, and the ten slaves, above referred to, constitute $2105 of the said whole estate. It is contended on the part of the appellant, the residuary legatee, that the negroes in question passed to him under the residuary clause in the will, already set out. Oral testimony was then introduced by the appellee, to show that the testatrix did not intend to embrace this particular property, (the ten slaves,) in the residuary clause.

In this aspect of the case two questions arise: the first is, can the intention of the testatrix, to exclude these negroes from the operation of her will, be gathered from the terms of the will itself, and from the surrounding circumstances of the case? and secondly, if not, will it be competent to offer oral testimony to show that the real intention of the testatrix was to make no testamentary disposition of said slaves?

An affirmative answer to the first proposition, will render a consideration of the second unnecessary.

We have no hesitation in saying that the proper construction of the clause of the will now before us, would exclude from its operation the negroes in controversy.

If the clause in question had terminated with the expression, "the rest and residue of my estate," it might doubtless have passed all the property owned by the testatrix at the time of her death, and which had not been specifically de-

Cole *vs*. Ensor, *et al.*

vised. But these words are qualified and restricted by the words immediately succeeding, namely, "consisting of." The effect of these last named words is to indicate, that the testatrix intended to enumerate what she considered to be *the rest and residue of her estate*, and what she designed should pass under that general designation. She accordingly then proceeds to specify, "household furniture, cattle, horses," &c.

She mentions by name "her negro girl Beck," as a part of the property intended to pass under this clause of her will. Does not this circumstance of itself, exclude the idea that her other negroes were also to pass under the same clause? If it were her purpose to devise *all* her negroes, why name *one*, and make no reference to the rest, either by the use of particular or general terms?

Much stress has been laid upon the succeeding comprehensive expression, "all and singular, of whatever kind, named or intended to be named." This language, under the peculiar features of this case, manifestly should be confined to the property previously designated, namely, "household furniture, cattle," &c.

With a view still further and more minutely to designate the property designed to be embraced in this clause, and to exclude all other not named, the testatrix proceeds to add: "likewise all the produce of the farm, and all the produce that shall be growing on the farm at the time of my death." 1 *Peere Williams*, 302, *Cook vs. Oakley. Timewell vs. Perkins*, 2 *Aik.*, 102. *Boon vs. Cornforth*, 2 *Ves.*, *Sr.*, 277. *Delamater's Estate*, 1 *Wharton*, 362. *McChesney vs. Bruce*, 1 *Maryland Rep.*, 344.

Another controling feature in this case is to be found in the circumstance, that while the testatrix descends to the most minute enumeration of the articles of property which she designed to pass in this clause, she omits all mention of, or allusion to, the slaves, which are equal in value to all her other property together. We must infer from this fact, that as she did not mention the slaves with her other property, she did not intend to pass them under the will.

*Decree affirmed, with costs in both courts.*