# LOUIS HEIM

*vs.*

# CHARLES ROBERTS, an Infant.

*Negligence—Res Ipsa Loquitur—Lumber Piled on Sidewalk—
Evidence—Review of Instructions—Assumption of Facts.*

That one passing on the sidewalk was injured by the fall of pieces from a pile of lumber on the sidewalk in front of a defendant's mill, placed there by defendant's orders, imposed on the latter the burden of showing the absence of negligence, under the doctrine of *res ipsa loquitur.*          pp. 604-607

That one of the defendants, employed by the mill owner, testified that he did the piling of the lumber and that it was properly done, was not in itself sufficient to prevent the inference of negligence, under the doctrine of *res ipsa loquitur,* from going to the jury to be considered by it.          p. 608

Testimony by the driver of a lumber truck that on approaching defendant's mill he pulled alongside the pile of lumber on the sidewalk, but about four or five feet therefrom, and that he did not take any lumber off his truck until after the accident, was not sufficient to show that the pieces of lumber which fell from the pile and injured plaintiff were caused to fall by the truck backing up against the lumber.          pp. 606, 607

Under Code, Art. 5, Sec. 9, that an instruction was defective in assuming that plaintiff was caused suffering by the accident is not available on appeal if no objection for such defect was taken on the trial.          p. 608

Possible error in admitting a hospital record to show the nature of plaintiff's injuries, *held* harmless in view of the consideration that the facts stated therein were either unimportant or were shown by other witnesses.          p. 609

*Decided January 15th, 1920*

Appeal from the Superior Court of Baltimore City
(BOND, J.).

Submitted on briefs to BOYD, C. J., BRISCOE, BURKE,.
THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

Ferdinand C. Dugan and Edward L. Ward, for the appellant.

Harry B. Wolf, Webster S. Blades and Moses W. Rosenfeld, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The suit in this case was instituted to recover for personal injuries received by the infant appellee, on the afternoon of July, 29th, 1918, while walking south on the sidewalk on Caroline street, near Dock street, in Baltimore, and in front of the premises of the appellant, the defendant below.

The action was brought not only against Louis Heim but also against Frank Myers; W. F. Keen & Company, a body corporate; W. Frank Keen and John A. Schad, co-partners, trading as W. F. Keen & Company, and the Mayor and City Council of Baltimore.

The declaration alleges that while the infant plaintiff
"was passing a stack or pile of lumber which had been
placed on the sidewalk or on the street next to said side-
walk, a piece or pieces of said lumber was caused and
procured to fall, and in falling did strike the said
infant plaintiff, causing him to sustain serious and
permanent injuries about the head, body and limbs, as a
result of which he has suffered and must continue to
suffer great physical pain and mental anguish, and has
been otherwise injured and damaged, and the said in-
fant plaintiff says that his said injuries were directly
caused by the negligence and want of care of each of
the defendants as hereinafter set forth, and without

negligence or want of care on his part directly there-
unto contributing; that the lumber aforesaid was piled
by the defendant, Frank Myers, in so careless and neg-
ligent a manner as to cause it to fall as aforesaid; that
the said Frank Myers was then and there the agent or
servant of the defendant, W. F. Keen & Company, a
body corporate, and the defendants, W. Frank Keen
and John A. Schad, co-partners, trading as W. F. Keen
& Company, acting within the scope of his authority
and in the course of his employment; *that the defend-
ant, Louis Heim, was in possession of the premises in
front of which said lumber was piled as aforesaid, and
that he directed or knowingly permitted the said lum-
ber to be piled as aforesaid, although he knew or, in
the exercise of ordinary care, ought to have known
that the piling of said lumber in the place aforesaid
rendered the said sidewalk dangerous for persons hav-
ing occasion rightfully to use the same;* that the de-
fendant, the Mayor and City Council of Baltimore
City, is a municipal corporation duly incorporated,
and it is its duty to keep its streets and sidewalks in
a reasonably safe condition for pedestrians having occa-
sion rightfully to use the same; that at the time of the
happening of the wrongs and injuries hereinabove set
forth, and for some time prior thereto, the said Mayor
and City Council of Baltimore City knowingly, fre-
quently and regularly permitted lumber to be piled on
or near the sidewalk of Caroline street, near Dock
street; that the piling of lumber as aforesaid rendered
the said sidewalk dangerous for persons having occa-
sion rightfully to use the same."

It seems that Frank Myers was never summoned; and the
case was dismissed by the plaintiff as to W. Frank Keen and
John A. Schad, co-partners, trading as W. F. Keen & Co.,
and the Mayor and City Council of Baltimore. The case
then proceeded to trial against the remaining defendants,
and at the conclusion of the plaintiff's testimony, the defend-
ant, W. F. Keen & Company, a body corporate, offered a

prayer asking the Court to instruct the jury that under the
pleadings there was no legally sufficient evidence to entitle
the plaintiff to recover against it.   This prayer was granted
and a verdict was rendered in its favor.   The defendant,
Heim, asked for a similar instruction, which was refused
him.   To which ruling of the Court, he excepted and de-
clined to offer any testimony on his behalf.   The Court there-
upon granted what are designated as the plaintiff's first and
third prayers.   The first was granted as offered and the third
granted as modified by the Court.   The defendant offered one
other prayer, known as his second prayer, which was also
refused.   The defendant thereupon excepted generally to the
granting of the plaintiff's prayers and to the refusal of his
prayers.

The verdict of the jury was in favor of the plaintiff and
upon that verdict a judgment was entered against the de-
fendant and he has taken this appeal.

There are but three exceptions found in the record, one
upon the admission of evidence and two upon the prayers.
We will first consider the rulings of the Court on the pray-
ers.

The defendant's first prayer asked the Court to instruct
the jury that under the pleadings in the case there is no
legally sufficient evidence to entitle the plaintiff to recover
against the defendant.

The pile of lumber referred to in the declaration was lo-
cated upon the sidewalk in front of defendant's mill, which
was upon the building line of the street or immediately upon
the inner edge of the sidewalk.   The outer edge of the lum-
ber was six or eight inches from the curb and extended four
or five feet towards the building line, leaving a space of eight
or ten feet between it and defendant's building.   The lum-
ber, which was piled to the height of four or five feet, was
as stated by Frank Myers, the party who piled it, "sixteen
feet long and two inches on one side and six inches on the
other."   He further stated that he was directed by the de-

fendant to pile the lumber upon the sidewalk or pavement, where he placed it.

The infant plaintiff, a boy of seven or eight years of age, with his companion, James Kiehne, ten years of age, was returning to his home from the moving picture show, about five o'clock in the afternoon. At that time a storm was coming up and he was hurrying home to avoid it. When he reached a point between the lumber and the building of the defendant, pieces of the lumber fell upon him, inflicting the injuries complained of. Both he and his companion saw the lumber when it slipped from its position on the pile immediately before it fell, but at that time, as Kiehne expresses it, they were between the lumber and the building, the plaintiff between him and the lumber, and it was then too late "to get out of the way of it."

The first prayer of the defendant was asked for because of the position taken by him that the evidence offered did not tend to show the negligence of the defendant, as alleged in the declaration, which resulted in the accident complained of. The negligence charged against the defendant, which is the gravamen of the action, is that he, being in possession of the premises in front of which the lumber was piled, "directed, or knowingly permitted it to be piled, *as aforesaid,"* that is, "in so careless and negligent a manner as to cause it to fall," "although he knew or, in the exercise of ordinary care, ought to have known that the piling of said lumber in the place aforesaid rendered the said sidewalk dangerous for persons having occasions rightfully to use the same."

As was said by this Court in *Howser* v. *Cumberland & P. R. R. Co.,* 80 Md. 148, "whilst the general rule undoubtedly is, that the burden of proof that the injury resulted from negligence on the part of the defendant, is upon the plaintiff, yet in some cases, 'the very nature of the action may, of itself, and through the presumption it carries, supply the requisite proof.' *Wharton on Negligence,* par. 421. Thus when the circumstances are of such a nature that it may be

fairly inferred from them that the reasonable probability is that the action was occasioned by the failure of the appellee to exercise proper caution which it readily could and should have done; and in the absence of a satisfactory explanation on the part of the defendant a presumption of negligence arises against it." *Byrne* v. *Boadle,* 2 Hurl & C. 722.

In these cases, the doctrine of *res ipsa loquitur* applies. This doctrine as defined by the late CHIEF JUSTICE Mc-SHERRY in *Strasburger* v. *Vogel,* 103 Md. 89, "is merely a short way of saying that the circumstances attendant upon an accident are themselves of such a character as to justify a jury in inferring *negligence* as the cause of that accident." In cases to which the doctrine applies, the plaintiff is relieved of the burden of proving negligence on the part of the defendant, which is ordinarily required of him in other cases. In such cases "an inference of negligence in lieu of direct proof of negligence, may be deduced from all the circumstances attendant upon and surrounding an accident, if the injury results from a condition or event not only in its very nature destructive of the safety of persons or property, but also so wrongful in its quality as to permit, at least primarily, no inference except that of negligence on the part of the person controlling the injurious agency." *Strasburger* v. *Vogel, supra.*

In the case last cited, the plaintiff was injured by a falling brick from the chimney of the house in the possession of the defendant. In that case JUDGE MCSHERRY said, "if the chimney was in a condition of repair and if no independent agency intervened, the bricks would not have fallen; and if no other fact had appeared in the case reflecting upon or accounting for their falling, the mere fact that they fell was a sufficient circumstance from which a jury might have fairly concluded that their fall was due to a failure on the part of the defendant to keep the chimney in proper repair; and such a failure would be negligence."

In this case, the record discloses no independent intervening agency causing the pieces of lumber to fall from the pile, although the claim is made by the defendant that it was caused by the truck backing up against the lumber, causing some pieces of it to fall. This claim is made upon the testimony of Frank Miller, who was at the place of the accident at the time it occurred with a truckload of lumber that he had carried there to be placed upon the pile. With him was one Borton, the driver of the truck, who assisted him in the loading and unloading of the truck.

Miller was asked: Q. Did you see the accident? A. No; I did not see it, I heard the lumber falling, then I heard the boy holler, and I ran around on the side, me and the man that was driving the truck. Q. That was before or after you had begun to unload any of the lumber from your truck? A. We had not taken a piece off our truck. Q. But you had stopped your truck? A. Yes. He further testified that "when he heard him holler, he ran to where the lumber fell, picked him up, and about four or five pieces of lumber were on the boy; that as far as he could see the lumber struck the boy from his kneecap on down; the boy was lying on his back, and he carried him to his home." Upon cross-examination, he was asked: Q. The lumber that you brought down, you did what with when you first got there; when you first got there, where did you put that lumber? A. We went in and asked him (Heim) whether we could put this lumber inside so we could get it the next morning, and he said pile it out on that pile outside on the pavement. Q. Had the boy been hurt at that time? A. No. Q. Where did you actually pile that lumber you had on your truck? A. *After the boy was hurt,* we turned the machine around and pulled alongside of the pile of lumber and got off the truck, and by that time the pile of lumber fell over on the boy, and after that I took the boy down to his house and the man who was running the truck unloaded it on this pile that had fallen over. Q. How far was the truck from the pile of lumber? A. You

mean out in the street? Q. Yes. A. Between four and five feet. He also testified that he had not taken a piece of lumber off his truck and put it on the pile before the boy was hurt * * * that nothing was off the truck when he left there, and the truck was standing four or five feet from the curb.

It will be observed that in his testimony he says that it was not until after the boy was hurt that they turned the machine around and pulled alongside of the pile of lumber. It is true that in the same answer he says "by that time the pile of lumber fell over on the boy." Just what he meant by this expression, we do not know; unless he meant to say that at such time the lumber had already fallen over on the boy. Any other interpretation would not harmonize with what he had previously said in that answer.

It will also be borne in mind that he said, after turning his machine and pulling it alongside the lumber, it was still between four and five feet from the pile, and this was the position of the truck when he left it to carry the boy to his home.

This testimony is inconsistent with the claim of the plaintiff that pieces of the lumber were caused to fall from the pile by the truck backing up against it.

The doctrine to which we have referred applies, in our opinion, to the facts of this case, and the jury were entitled to infer negligence on the part of the defendant, from such facts and circumstances unexplained by the defendant. It is true that Myers, one of those against whom suit was brought, and whose testimony was confined by the plaintiff to the proof of the fact that he piled the lumber on the pavement upon the direction of Heim, testified on cross-examination that the lumber was properly piled upon the pavement; but this mere general allegation that the lumber was properly piled, made by one against whom suit had been brought to recover damages for the personal injuries suffered by the plaintiff, resulting from his alleged negligence in piling said lumber, may or may not have been believed by the jury.

under such circumstances. It does not explain or throw any light upon the question as to why the lumber fell, causing the injury complained of, and was not, we think, in itself, sufficient to prevent the inference of negligence, under the doctrine stated, from going to the jury to be considered by it. This being so, the ruling of the Court in refusing to grant the prayer, taking it from the jury, was correct.

By the defendant's second prayer, the Court was asked in substance to instruct the jury that the doctrine we have discussed did not apply. It follows from what we have said in our discussion of the Court's ruling upon his first prayer that the Court acted properly in refusing his second prayer.

The objection is urged against the plaintiff's first prayer that he assumes that the infant plaintiff was subjected to physical and mental suffering, without leaving such fact for the jury to find. It was shown by undisputed evidence that the infant plaintiff sustained physical injuries from the falling of the lumber upon him and that he suffered from such injuries, but if the prayer be defective because of the reason assigned, we cannot so hold on this appeal, as it does not appear from the record that an objection thereto for such defect was taken at the trial. Art. 5, Sec. 9 of the Code of 1912.

A like objection is made to the plaintiff's third prayer. What we have said as to such objection urged against the plaintiff's first prayer likewise applies to this prayer. The prayer, we think, was properly granted.

The only exception left for our consideration is the one upon the admission of testimony. Dr. Lentz was produced as a witness by the plaintiff. He testified that he was Assistant Superintendent of Johns Hopkins University and had charge of the records of X-Ray photographs. He produced X-Ray photographs taken of the injuries of the infant plaintiff, some of which were taken when he was brought to the hospital for treatment, others in the month following. The witness then was permitted to explain the plates, which

showed a fracture of both the tibia and fibia of the right leg
and injuries to the right foot. He was then asked, "Did you
bring the record in this case with you," and upon answering
"yes," he was asked to state what the record shows. The
attorney for the plaintiff, when asked by the Court if he
wanted all the record, said he only wanted a summary report
of the case. The witness then proceeded to answer, saying
"this record shows Charles Roberts, age seven years, living
917 S. Caroline St.; occupation, schoolboy; admitted July
29th, 1918, and discharged August 24th, 1918, and the diag-
nosis was fracture of the tibia and fibia of the right leg and
lacerations of the dorsum of the right foot. Brought in with
complaint of injury of right leg. Sent in by Dr. Gray as
emergency case from the accident room; past history appar-
ently good, and met with an accident while standing near a
lumber pile and"—witness was interrupted by an objection
from the defendant's counsel, whereupon the counsel for
plaintiff stated, "we don't want the boy's account of how the
accident happened, but we want what the report shows of the
boy's physical condition. A. He was brought to this insti-
tution, and when admitted was found to have"—he was again
interrupted by defendant's counsel asking, "Did you make
that report? A. Made by some other doctor. Q. Is that
doctor living? A. The doctor that made that report is dead.
Q. That is the official record of the hospital? A. Yes; the
only record the hospital has." Witness was then asked, "Has
Dr. Gray signed that report? A. No; it was taken by the
dictaphone and taken to the stenographer and got out by the
stenographer. They have the name and serial number to
show it is the same case." Objection was then made to the
reading of the record. Objection being overruled, the ex-
ception under consideration was noted.

Even should it be held that the record, as disclosed, should
not have been admitted in evidence, its admission was not
harmful to the plaintiff. The record contains the age and

residence of the boy and the dates when admitted and discharged from the institution. These facts were shown by the witnesses, who testified in the case. The report states that "the diagnosis was the fracture of the tibia and fibia of the right leg and laceration of the dorsum of the right foot." This condition was disclosed by the X-Ray photographs, which were fully explained by Dr. Lentz and admitted in evidence without objection. The other facts contained in the record are unimportant and throw no additional light upon the injuries or extent of the injuries suffered by the plaintiff. Therefore the admission of the facts contained in such report, if wrongfully admitted, were not harmful or injurious to the defendant.

The judgment recovered by the plaintiff below will be affirmed.

*Judgment affirmed, with costs.*