POTOMAC EDISON COMPANY ᴇᴛ ᴀʟ *v.* JAMES T. JOHNSON.

[No. 53, October Term, 1930.]

*Decided December 5th, 1930.*

34

On reargument. Before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Alexander Armstrong* and *Leo Weinberg,* with whom were *William C. Walsh* and *Armstrong, Machen & Allen* on the brief, for the appellant.

*F. Brooke Whiting* and *Walter C. Capper,* with whom was *Thomas L. Dawson* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

The appellant owns and operates an interurban car line between Hagerstown and Frederick, Maryland, known as

The Hagerstown & Frederick Railway. In Frederick the track is located in the middle of Patrick Street. On July 19th, 1928, appellee, while driving in his automobile from Baltimore to Cumberland on Patrick Street, which is a continuation of the National Pike connecting the two last mentioned cities, saw approaching him on said street an engine and several freight cars of said company and, as there was not room to pass by reason of automobiles parked in said street, parked his car along the right-hand curb of said street to await the passing of the train. While his automobile was so parked, the last of said cars, a large freight car heavily loaded with cement, ran off the track and struck the automobile, injuring appellee and his car. He sued the company and obtained a judgment against it, from which this appeal was taken. In the course of the trial a number of exceptions were reserved to rulings on evidence which were not pressed. We find no reversible error in any of them. The important questions in the case are raised by the exception to the rulings on plaintiff's second prayer, which was granted, and defendant's A prayer, which was refused, and defendant's fifth prayer, which was granted in connection with plaintiff's second prayer. The reporter is requested to set out these prayers. Plaintiff's first prayer was the ordinary damage prayer and was properly granted if there was any case to be submitted to the jury; and there was no error in refusing defendant's third prayer, as it was fully covered by its fourth prayer, which was granted.

The case was ably argued on both sides, mainly on the theory that it was controlled by the determination of the questions whether or not the maxim *res ipsa loquitur* was applicable, and if so, whether the defendant had so conclusively rebutted the presumption of negligence that it was entitled to a directed verdict.

In a note to the case of *Kentucky Track and Terminal Co. v. Bain* (Ky.), L. R. A. 1917 D, page 813, it is said, "by the weight of authority the maxim *res ipsa loquitur* applies to the case of one properly at a place in the street who is

there injured by derailment of a street car." And in 45 C. J., p. 1286, sec. 853: "Where an accident is one that would not ordinarily have happened if due care and caution had been used, the mere fact of the injury is sufficient to carry the case to the jury on the question of defendant's negligence." Citing *Surrey Lumber Co. v. Zissett,* 150 Md. 494, 509-510; *Ches. Iron Works v. Hochschild,* 119 Md. 303, 311. See also *Howser v. Cumberland & P. R. Co.,* 80 Md. 146; *Pindell v. Rubenstein,* 139 Md. 569; *Chesapeake & Pot. Tel. Co. v. Miller,* 144 Md. 645; *State use of Thompson v. Emerson & Morgan Coal Co.,* 150 Md. 429; *Heim v. Roberts,* 135 Md. 600; 2 *A. L. R. Ann.,* p. 1614. The great weight of authority seems to be with appellant on the proposition that the burden or duty of explanation, which is cast on defendant by operation of the doctrine of *res ipsa loquitur* where it is applicable, is, not satisfactorily to account for the occurrence and to show the actual cause of the injury, but merely to rebut the inference that it had failed to use due care. 45 *C. J.,* p. 1222, sec. 784; *Duer v. Consolidated Gas Co.,* 86 App. Div. 14, 87 N. Y. S. 714; *Bourguignon v. Peninsular R. Co.,* 40 Cal. App. 689; *Carroll v. Boston Elevated Rwy. Co.,* 200 Mass. 527, 86 N. E. 793. 797. Many other cases are cited by appellant, and our own decisions above cited are not in conflict with this view, so far as regards that maxim.

It is further strenuously urged by appellant that its A prayer should have been granted on the theory that it had gone forward with evidence and exculpated itself from the inference of negligence by uncontradicted testimony, there being, it claims, no affirmative proof of negligence. This position is strongly supported by authority outside of Maryland. 45 C. J., p. 1286, secs. 853 and 857. Cases are also cited from Alabama, Arkansas, California, Florida, Georgia, Michigan, Mississippi, Missouri, Nebraska, New York, North Dakota, Oregon, Pennsylvania, Texas, Utah and Wisconsin. There is, however, in Maryland, at least one comparatively recent case which holds that the question of excul-

pation is for the jury. *Heim v. Roberts,* 135 Md. 600. See also *United Railways Co. v. Dean,* 117 Md. 686; *Strasburger v. Vogel,* 103 Md. 89.

Besides, there is to be considered the contention of appellee that testimony offered by appellee as to an unused switch at or near the point of departure of the freight car from the track was at least some affirmative evidence of negligence which raised a question of fact to be passed on by the jury. Again it is urged by appellant that, even if the question of negligence was properly left to the jury, it was prejudicial error to instruct the jury that under the doctrine of *res ipsa loquitur* the burden of disproving negligence was on the defendant. This question is raised by the granting of defendant's fifth prayer in connection with plaintiff's second prayer. Here, again, the position of appellant finds support in the many decisions cited by appellant in its brief, of which *Sweeney v. Erving,* 228 U. S. 233, 244, in which Mr. Justice Pitney wrote the opinion, is illustrative. It is there said: "In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence; not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make out a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur,* where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff. Such, we think, is the view generally taken of the matter in well considered judicial opinions."

Prayers substantially the same as plaintiff's second prayer were approved by this court in *Balto. & O. R. Co. v. Worthington,* 21 Md. 275, 282-283; *Green Ridge R. Co. v. Brinkman,* 64 Md. 52; *Balto. & Potomac R. Co. v. Swann,* 81 Md. 400, 409; *United Rys. & Elec. Co. v. Dean,* 117 Md. 686. We do not think the prayer is in conflict with the principle

contended for by appellant, or with the authorities in other jurisdictions. It does not shift the burden of proof. It says in effect that, when the presumption attaches, there is cast upon the defendant the burden of meeting it by showing there was no negligence on its part. It does not say, or mean, that the weight of the evidence in that regard must be on the side of the defendant. Defendant's fifth prayer would have been misleading if it had been granted without qualification.

We have discussed somewhat at length the questions argued by counsel on both sides, but we do not think it necessary to decide them on the basis of the maxim *res ipsa loquitur*. We think this case is controlled by *West Va. Cent. & Pittsburgh R. Co. v. State, use of Fuller,* 96 Md. 652, in which Chief Justice McSherry wrote the opinion. There, the defendant was operating a railroad through the suburbs of the village of Luke, Allegany County, and one of its cars was derailed and fell upon and killed an infant son of the equitable plaintiff. It was sued for negligence and the case, as here, was argued by plaintiff on the theory of *res ipsa loquitur,* but in the opinion that maxim was not mentioned. The court relied on another maxim. It said:

"So use your own rights and property as to do no injury to those of others, is a maxim of the law which imposes upon a railroad company a duty towards the public and towards each individual who is not himself a wrongdoer, and which is no less binding than when applied to natural persons in their ordinary relations." Several illustrations are given where this principal was applied, such as injury from blasting, as in *Scott v. Bay,* 3 Md. 446, and settling of walls of neighboring house by reason of excavations in a street, as in *Balto. & Pot. R. Co. v. Reaney,* 42 Md. 117, where the suits were in case, and others where the actions were trespass. The opinion proceeds: "Now it would seem to be a perfectly plain duty of a railroad company to keep its cars on the rails laid on its right of way, or at least to keep them within the limits of its right of way. Every abutting land proprietor has a right to insist that this shall be done so that in using the dangerous agencies employed in operating the road his per-

son and property may not be injuriously affected. This duty is due not only to the abutting land owner, but to every individual lawfully on contiguous property to the right of way. It is therefore a duty due every person along, or who may be passing along, but not on, the right of way. And this duty springs out of the obligation upon the company to so use its own rights and property as not to injure the rights or the property of others. Starting with that duty, it is clear when a car has, by a collision, been hurled outside the right of way, and an injury has been inflicted on one lawfully there, a breach of duty has occurred, and consequently there has been negligence, and for the injury thus inflicted an action will lie unless it be shown that an unavoidable accident was the efficient cause of the injury. No effort was made to do this, and therefore it does not become necessary to trace back of the breach of duty which occasioned the injury the causes which produced that breach, or to ascertain whether the causes of the cause were themselves acts of negligence."

Likewise, in the present case, there was no attempt by defendant to show that the occurrence was unavoidable. Defendant undertook to show that it was not negligent, but here, as in the *Fuller* case, the right of the plaintiff to recover did not depend upon negligence alone. In the opinion in the *Fuller* case it is noted that some of the cases cited were actions of trespass, while the declaration in the case under consideration was in case, but as the prayers under consideration were demurrers to the evidence and made no reference to the pleadings, it was held that the right to recover depended, not upon the form of the action or the state of the pleadings, but solely upon the case made by the proof. So here, defendant's A. prayer is a demurrer prayer and makes no reference to the pleadings.

From what we have said it will be apparent that our decision does not hold that the burden of proof was on the appellant, but only that the duty was cast upon it to go forward with the evidence, and it was for the jury to say whether it had met that obligation, and that, therefore, the conclusion we have reached is not in conflict with *Manley v. Georgia,*

279 U. S. 1, cited by appellant. See *May Oil Burner Corp. v. Munger,* 159 Md. 605; *Globe Indemnity Co. v. Reinhart,* 152 Md. 439, 459.

Finding no error in the rulings, the judgment must be affimred.

*Judgment affirmed, with costs to appellee.*

---

BOND, C. J., filed a dissenting opinion, as follows:

In this case, as in similar cases, the expression *res ipsa loquitur* has been the basis of much of the argument, and I venture to urge upon the attention of the profession in the state an objection to the continued use of it. It adds nothing to the law, has no meaning which is not more clearly expressed for us in English, and brings confusion to our legal discussions. It does not represent a doctrine, is not a legal maxim, and is not a rule. It is merely a common argumentative expression of ancient Latin brought into the language of the law by men who were accustomed to its use in Latin writings. It is to be found used twice, for instance, in one of Cicero's orations, *Orat. in Defence of Milo,* pars. 53 and 66, and again in a varied form, *res ipsa luceat,* in the same oration, par. 61. In judicial opinions in England it seems to have been used first in declaring that usury was established by the appearance of an excessive charge on the face of an instrument. *Roberts v. Trenayne,* Cro. Jac. 508 (1614); *Bank of United States v. Waggoner,* 9 Pet. (U. S.) 399 (1835).

In the law of negligence, it was first made use of in a remark of Baron Pollock's during the course of argument in *Byrne v. Boadle,* 2 H. & C. 721 (1863).

It has been used also in reference to revocation of a license to use a way (*Nichols v. Peck,* 70 Conn. 441); and in reference to misrepresentations in a sale of goods. *Patterson v. Landsberg & Son,* 7 Fraser (Scotch Court of Sess.), 675. It may just as appropriately be used in argument on any subject, legal or otherwise. Nowhere does it mean more than the colloquial English expression that the facts speak for

themselves, that facts proved naturally afford ground for an inference of some fact inquired about, and so amount to some proof of it. The inference may be one of certainty, as when an excessive interest charge appeared on the face of an instrument, or one or more or less probability only, as when negligence in the care of a barrel of flour was found inferable from its fall out of a warehouse.

In the facts available in the present case I have not been able to see ground for either the inference of negligence in causing the wheels of the car to leave the track, or the second inference of identity of the defendant as the negligent party, if negligence can be assumed. For all that appears, some condition in the street bed may have lifted the car out of the track, and it would seem to me especially likely that such was the cause, for a giving way of anything on the car would seem likely to throw the car off the outside of the curve rather than off to the inside, as here. And we have no warrant for inferring that the defendant was the one who produced a condition in the public street. The street bed was not in its sole control.

URNER and PARKE, JJ., also dissent.