D'ANNA v. UNITED STATES (two cases).

THOMPSON v. UNITED STATES.

KLAUS v. UNITED STATES.

Nos. 6032, 6033, 6034, 6035.

United States Court of Appeals
Fourth Circuit

Argued March 10, 1950.

Decided April 11, 1950.

336

Morgan L. Amaimo and Charles W. Main, Baltimore, Md., for appellants.

James B. Murphy, Asst. U. S. Atty., Baltimore, Md. (Bernard J. Flynn, U. S. Atty., Baltimore, Md., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

These are appeals by plaintiffs from adverse judgments in actions for damages under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq. Plaintiffs are persons who claim to have been injured and damaged as the result of the falling of an auxiliary gasoline tank attached to a naval aeroplane which was participating in a demonstration over ·the City of Baltimore. The gasoline tank became detached from the aeroplane as it was diving over the city and plummeted to earth striking the fruit stand of the plaintiff Vincent D'Anna in the Lexington Market, where he and the other plaintiffs were standing. The question presented by the appeal is whether there was error on the part of the trial judge in holding that the presumption of liability raised by the Maryland statute from the falling of the gas tank had been rebutted by the evidence offered.

There can be no question but that the liability of the United States under the federal tort claims act is to be determined by the standards and tests of the law of Maryland. 28 U.S.C.A. § 1346(b); State of Maryland to the use of Burkhardt v. United States, 4 Cir., 165 F.2d 869, 871, 1 A.L.R.2d 213. And the liability of the owner of an aeroplane, under the law of Maryland, for injuries occasioned by the falling of an object therefrom is covered by article 1A section 5 of the Maryland Code, which provides: "5. (Damages on land.) The owner of every aircraft which is operated over the lands or waters of this State is prima facie liable for injuries to persons or property on the land or water beneath, caused by the ascent, descent or flight of the aircraft, or the dropping or falling of any object therefrom, unless the injury is caused in whole or in part by the negligence of the person injured, or of the owner or bailee of the property injured, or unless at the time of such injury the said aircraft is being used without the consent, express or implied, of the owner. * * * The presumption of liability on the part of the owner, or of the owner and lessee, as the case may be, may be rebutted by proof that the injury was not caused by negligence on the part of such owner or lessee, or of any person operating such aircraft with the permission of the owner or lessee, or of any person maintaining or repairing such aircraft with the permission of the. owner or lessee. * * *"

It is clear that the case here falls within the presumption raised by the statute; and we think it equally clear that the evidence offered by the government was not sufficient to rebut the presumption. It is undisputed that the tank became detached from the plane while it was flying over the City of Baltimore in a formation with 69 other planes in a public exhibition, and that this occurred during or immediately after a 30 degree dive of more than 7,000 feet. The tank was fastened beneath the plane, attached to the bomb rack by hooks, and no satisfactory explanation is offered as to how it became detached. There was evidence that a pin somehow came out of the bomb rack and that the bomb rack was

found afterwards to have spread, but there is no satisfactory showing as to what caused the pin to come out or the rack to spread. It was shown that a lock ring which held the pin in place was sheared, but not how the shearing occurred. The report of the naval board of inquiry, which was in evidence, says: "It is believed that a severe twisting or sidewise force was applied to both hook and link assemblies at one time or another which tended to allow the play in the hook and link assembly to act on the pin in such a manner as to bend and draw the pin through the holes, thus shearing off the lock rings."; but there is no evidence as to when this occurred, nor why an operation of the plane resulting in such twisting or sidewise force should not be deemed negligent, nor why, if it occurred prior to the flight in question, its effect upon the safety of the attachment of the gasoline tank would not have been revealed by proper inspection. There was evidence that the plane was given routine inspections after each 30 hours of flying time; but the person who made the inspection next preceding the flight over Baltimore had no recollection apart from his recollection of custom as to the inspection made; and not only was his inspection report not produced, but there was evidence that it had been destroyed as a matter of routine procedure, although the dropping of the tank had been an occurrence of sufficient consequence to call for a board of inquiry. Surely, the presumption of negligence raised by the statute is not met by vague and unsatisfactory evidence of this sort.

One who flies an aeroplane is opposing mechanical forces to the force of gravity and is engaged in an undertaking which is fraught with the gravest danger to persons and property beneath if it is not carefully operated or if the mechanism of the plane and its attachments are not in first class condition. At common law, the hazardous nature of the enterprise subjected the operator of the plane to a rule of absolute liability to one upon the ground who was injured or whose property was damaged as a result of the operation. A.L.I.Restatement Torts secs. 519, 520, d; Prosser on Torts p. 452. The Maryland statute has modified this rule to the extent that the owner or operator of the plane may exculpate himself by showing that the injury was not caused by negligence on his part. The res ipsa loquitur rule, however, is clearly applicable to situations such as this [1] and justifies a finding of liability, as does the statute, unless the burden which the statute imposes is met by an adequate showing that the injury was not due to negligence. Such burden is easily met where it can be shown that the falling object was dropped from the plane by a passenger or other person over whom the operator of the plane had no control. It is more difficult to meet where the plane itself or an object attached to it crashes to the ground and inflicts injury; for the falling in such case is the strongest sort of proof of either negligent operation or defective construction or equipment. Such proof is manifestly not overcome by evidence of routine inspections of the sort here produced, particularly where the reports of the inspections are not produced.

For the reasons stated, the judgments appealed from will be reversed and the cases will be remanded for further proceedings not inconsistent herewith.

Reversed and Remanded.

---

1. Jesionowski v. Boston & Maine R. Co., 329 U.S. 452, 457, 67 S.Ct. 401, 91 L.Ed. 416, 169 A.L.R. 947; Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815, Ann.Cas.1914D, 905; San Juan Light Co. v. Requena, 224 U.S. 89, 98-99, 32 S.Ct. 399, 56 L.Ed. 680; Hochschild Kohn & Co. v. Canoles, Md., 66 A.2d 780; Potts v. Armour & Co., 183 Md. 483, 39 A.2d 552; Smith v. Blue Ridge Transp. Co., 172 Md. 42, 191 A. 66; Potomac Edison Co. v. Johnson, 160 Md. 33, 152 A. 633; Heim v. Roberts, 135 Md. 600, 109 A. 329; West Virginia Central & Pittsburgh R. Co. v. State, 96 Md. 652, 54 A. 669, 61 L.R.A. 574.